GENERAL ANILINE & FILM CORPORATION, AS SUCCESSOR TO OZALID
CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

Docket No. 1779.    Promulgated July 10, 1944.

*T. F. Davies Haines, Esq.*, for the petitioner.
*Sidney Gambill, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: This case involves excess profits tax. Deficiency
was determined in the amount of $6,471.11. The question presented is
whether the Commissioner erred in placing upon an annual basis,
under section 711 (a) (3) of the Internal Revenue Code,[1] the excess
profits net income of petitioner's subsidiary, Ozalid Corporation (here-
inafter sometimes referred to as Ozalid), for the period of its existence
in 1940, from January 1 to September 30.

All facts were stipulated. Omitting formal parts, the stipulation
reads as follows:

1. General Aniline & Film Corporation is a Delaware corporation with its
principal office at 230 Park Avenue, New York, New York.

2. Ozalid Corporation was a Delaware corporation until September 30, 1940,
when its corporate existence terminated and at which time it ceased operations,
was dissolved, retaining no assets, as the result of its merger into the petitioner,
whereby the petitioner became the successor thereto.

3. Prior to September 30, 1940, the petitioner owned all of the capital stock of
Ozalid Corporation.

4. On September 30, 1940, the petitioner merged its wholly-owned subsidiary,
Ozalid Corporation, into itself by duly filing a certificate of ownership of Ozalid
Corporation duly executed by the Petitioner on September 27, 1940, as provided
by section 59A of the Corporation Law of Delaware.

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net
income for any taxable year beginning after December 31, 1939, shall be the normal-tax net
income, as defined in section 13 (a) (2), for such year except that the following adjust-
ments shall be made:

* * * * * * *

(3) TAXABLE YEAR LESS THAN TWELVE MONTHS.—

(A) General Rule.—If the taxable year is a period of less than twelve months the excess
profits net income for such taxable year (referred to in this paragraph as the "short tax-
able year") shall be placed on an annual basis by multiplying the amount thereof by the
number of days in the twelve months ending with the close of the short taxable year and
dividing by the number of days in the short taxable year. The tax shall be such part of
the tax computed on such annual basis as the number of days in the short taxable year is
of the number of days in the twelve months ending with the close of the short taxable year.

5. On the filing of said certificate of ownership on September 30, 1940, all of the estate, property, rights, privileges and franchises of Ozalid Corporation vested in the petitioner, which assumed and became subject to all liabilities and obligations of Ozalid Corporation and the rights of all creditors thereof including the liability of Ozalid Corporation for the Federal excess profits tax for the period from January 1, 1940, to September 30, 1940, in the same manner as if the petitioner had itself incurred such liabilities and obligations.

6. Prior to the taxable year 1940 Ozalid Corporation reported its income on the calendar year basis.

7. Subsequent to the aforesaid merger the petitioner filed with the Collector of Internal Revenue for the 21st District of New York an excess profits tax return for Ozalid Corporation covering Ozalid's operations for the period January 1, 1940, through September 30, 1940, a copy of which return is annexed hereto and marked "Exhibit 1". The amount of excess profits tax shown on the return aforesaid, to wit, $5,241.03, was paid.

8. The excess profits net income shown in the return was $97,092.20. The Commissioner added thereto the sum of $30.09, representing recoveries for bad debts deducted in prior years. The taxpayer signed and filed an agreement dated September 1, 1942, a copy of which is annexed hereto as "Exhibit 2".

9. Ozalid's excess profits net income for the calendar years ended December 31, 1936, December 31, 1937, December 31, 1938, and December 31, 1939, the net aggregate thereof, and the average excess profits net income for the said four years are as follows:

Excess profits net income for the year ended—

| | |
|---|---|
| December 31, 1936 | $9, 820. 49 |
| December 31, 1937 | 24, 822. 57 |
| December 31, 1938 | 9, 103. 40 |
| December 31, 1939 | 100, 737. 07 |

Net aggregate excess profits net income for four years _____ $144, 483. 53
Average excess profits net income for base period _____ $36, 120. 88

10. Ozalid's excess profits tax net income for the last half of the base period was greater than its excess profits net income for the first half of such period. The Commissioner, in computing Ozalid's excess profits credit based on income, applied the formula set forth in subparagraph (f) of section 713 of the Internal Revenue Code, sometimes referred to as the "growth formula", and arrived at an average base period net income in the amount of $73,719.59. Ozalid in its return had computed its average base period net income to be in the amount of $75,040.82, and its credit to be 95 percent thereof, or $71,288.78. The Commissioner allowed a credit of 95 percent of $73,719.59, or $70,033.61, as Ozalid's excess profits credit based on income. Said credit is not in dispute.

11. The Commissioner of Internal Revenue mailed to Ozalid Corporation a notice of deficiency dated February 23, 1943, a correct copy of which is attached to the petition as Exhibit A, and deemed a part hereof as if annexed hereto.

It is not considered necessary to set forth Exhibits 1, 2, and A, attached to the stipulation of facts, for the reason that all pertinent facts therein set forth are elsewhere stated in the stipulation, except as follows:

In determining the deficiency the Commissioner placed the $97,122.29 excess profits net income reported (as adjusted by $30.09, to which

petitioner agreed) upon an annual basis by multiplying by 366, the number of days in 1940, and dividing by 274, the number of days from January 1, 1940, through September 30, 1940, thus increasing the excess profits net income to $129,732.69. He computed the tax thereon to be $11,712.14. The petitioner paid $5,241.03, leaving a deficiency of $6,471.11. Of this amount petitioner has agreed that it is liable for $385.57, leaving $6,085.54 in controversy.

The only question here presented is whether it was proper for the Commissioner to place upon an annual basis the excess profits net income arising from petitioner's operation from January 1, 1940, through September 30, 1940.

The respondent takes the view that in this case, under the language used in section 711 (a) (3) of the Internal Revenue Code "the taxable year is a period of less than twelve months," and that therefore, as the section provides in such case, "the excess profits net income shall be placed on an annual basis." In other words, the respondent contends that the statute applies literally. Though the parties have stipulated that Ozalid's "corporate existence terminated" on September 30, 1940, "as the result of its merger into the petitioner," it is the petitioner's contention, in substance, that, Ozalid having prior to 1940 reported its income on the calendar year basis, its excess profits tax return was for the full calendar year 1940, and its taxable year was not "for a period of less than twelve months," within the language of section 711 (a) (3) of the Internal Revenue Code, so that the respondent erred in applying the provisions of that section and placing the excess profits net income on an annual basis. The argument is that subchapter E of chapter 2 of the Internal Revenue Code, covering excess profits tax, does not define taxable year, but in sections 728 and 729 (a) provides for the use of the terms and provisions of law in chapter 1, covering income taxes; that in that chapter section 47 provides for placing income upon an annual basis only in case of a change in accounting periods; that here there has been no such change of accounting period and, therefore, there is no authority for placing the excess profits income upon an annual basis. The petitioner cites cases to the effect that the placing of income on an annual basis is limited to those where the accounting period has been changed. Among these are *Bankers Trust Co.* v. *Bowers*, 295 Fed. 89, where the decedent had been on a calendar year basis of accounting, died during the year, and it was held that though the period of decedent's life covered by the return filed for the decedent was only a fraction of a year, nevertheless the return was for the full calendar year and not a fraction thereof. Section 226 (a) of the Revenue Act of 1921, which later became section 47 of the code, was involved. The same conclusion was reached in *Louis Hymel Planting & Mfg. Co.*, 5

B. T. A. 910, involving the excess profits tax law of 1918; and in *Davis Yarn Co.*, 8 B. T. A. 299, construing the excess profits tax law of 1921, which the Board, in following the *Hymel* case, found not materially different from that of 1918. *Lowell & Andover R. R. Co.*, 8 B. T. A. 501, and *Kennebunk & Kennebunkport Railroad Co.*, 8 B. T. A. 503, apply the same idea in income tax cases involving section 236 (c) of the Revenue Act of 1918.

Though the provision that in case of a change in accounting period income may be placed on an annual basis has been retained to the present time in section 47 of the Internal Revenue Code, section 200 (a) of the Revenue Act of 1924 (now section 48 (a) of the Internal Revenue Code) for the first time (and later than the statutes involved in the above cases relied upon by petitioner) added to the former definition of "taxable year," as "calendar year or fiscal year," the following:

* * * "Taxable year" includes, in the case of a return made for a fractional part of a year under the provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made.

As was said in *Pennsylvania Chocolate Co. v. Lewellyn*, 27 Fed. (2d) 762, "Any doubt or ambiguity regarding the meaning of 'taxable year' has been removed in section 200 of the Revenue Acts of 1924 and 1926." That court concluded that "the words 'taxable year,' when fairly interpreted, mean taxable period, whether for 12 months or less." In *Green River Distilling Co.*, 16 B. T. A. 395, wherein a return was filed for a corporation which, after eight months of its accounting period had elapsed, affiliated with another, we held that such return "is a return for a fractional part of a year" and sustained the Commissioner in allowing consideration of only eight-twelfths of invested capital, and allowing excess profits and war profits credit only to the extent of eight-twelfths of the amount allowable for a full year, though there had been no change in accounting period. In *Pennsylvania Electric Steel Casting Co.*, 20 B. T. A. 602, 605, we said:

* * * Under prior revenue acts, the term "taxable year" was defined as meaning a 12-month period but, beginning with the Revenue Act of 1924, Congress has seen fit to define a taxable year differently and to provide that the term "taxable year" includes, in the case of a return made for a fractional part of a year, the period for which such return is made. * * *

We held that a four-month period comprised a "taxable year" within the meaning of section 206 (e) of the Revenue Act of 1926, as to net loss, although there had been a change of accounting period, resulting in the filing of a return for a four-month period. See also *Prudential Tobacco Co.*, 42 B. T. A. 518, 519. It thus appears that

since the enactment of section 200 (a) of the Revenue Act of 1924 the term "taxable year" has been held to apply to returns covering fractional parts of a year in situations other than those in which there has been a change in accounting period.

In *Royal Highlanders*, 1 T. C. 184, 191, reversed on other grounds, 138 Fed. (2d) 240, a case involving income tax of 1937 and 1938, we were urged, under the *Bankers Trust Co.* and *Davis Yarn* cases, above, to hold that a return was for a full calendar year and not a fraction. A corporation had been exempt a part of a year, but thereafter was taxable. We held that section 47 of the Internal Revenue Code:

* * * was never intended to prevent a corporation filing its first return as a taxable entity from filing a return for the period of the year in which it received taxable income, or to require that a return so filed be held to be a return for the full calendar year when in fact it was not.

Petitioner filed a return for the fractional part of the year 1937 during which it was a taxable entity. Section 48 (a) provides that the term "taxable year" includes in the case of a return made for a fractional part of a year the period for which a return is made. Where no return was required for a portion of the year because petitioner was an exempt corporation, its taxable year, in our judgment, constituted the period covered by the return. * * *

The excess profits tax provisions of the revenue code here involved provide for computation of the excess profits net income by use of either credit based on income (sec. 713) or credit based on invested capital (secs. 714, 715, and 716). Section 716 provides for use of the average invested capital by consideration of the daily invested capital of each day of the taxable year. If the excess profits credit is based on income, section 713 provides for a credit of 95 percent of "average base period net income," and the base period is four years. In short, the credit is 95 percent of the income of a year arrived at by averaging the four previous years (with consideration of the "growth formula"). Thus it is seen that the petitioner, which has been allowed the full credit based upon such average year, desires that it be set against the income of only nine months of the year 1940, because Ozalid ceased operations, dissolved and terminated its corporate existence on September 30; whereas the respondent contends that the object of the excess profits tax law is subserved only if credit and income are computed upon the same period, that is, by placing the income of the fraction of the year on an annual basis, under section 711 (a) (3) of the code.

In our opinion the respondent's view should be sustained. The cases relied upon by the petitioner do not demonstrate that income may be placed on an annual basis only where there is change of accounting period and that unless a return for a fractional part of the year is one that is provided for by section 47 (a) it then becomes a return for the full calendar year. We do not think they apply here, when we consider

the obvious intent and purpose of the excess profits tax law here being considered. A hypothetical year, derived from the average of four years, with benefit of the "growth formula" (under section 713 (f) of the code), is considered as basis for 95 percent credit. To deduct such credit from income of only 9 months would, in our view, give the petitioner an advantage not intended by the lawmakers. If the taxable year is in fact a period of less than 12 months, the crucial language in section 711 (a) (3) may not reasonably be held inapplicable to the period here involved, and the authority cited does not justify a construction so technical and out of line with apparent statutory purpose. The section does not by its terms limit "annualization" of the income to cases of change of accounting period. We note that in the provisions as to declared value excess profits taxes (sec. 601, Revenue Code of 1939, and sec. 602 of the Revenue Act of 1938) there was provision for prorating a taxable year which is a period of less than 12 months; and that it was not until section 303 of the Revenue Act of 1942 [2] that there was added "on account of a change in the accounting period of the taxpayer" and the previous proration of the year was changed to a placing on an annual basis, in the same manner as provided by section 711 (a) (3). This fact and the fact that the latter section, though it also was amended by the Revenue Act of 1942 (by sec. 213) was not likewise amended to bring in the idea of annualizing a fractional year only in case of change of accounting period, indicate strongly that Congress did not in the Revenue Act of 1940 or the amendment by section 213 in 1942 (made by its terms retroactive to the taxable year here involved) intend to include in the statute the view here espoused by the petitioner, but even in 1942 intended a different approach from that taken as to declared value excess profits tax, where petitioner's view was then incorporated.

We notice also that in section 9 (a) of the Individual Income Tax Act of 1944 the "standard deduction" is not allowed in the case of a taxable year of less than 12 months "on account of a change in the accounting period." It thus appears that Congress incorporates that idea into law in some situations, in some not, and that it may not reasonably be

---

[2] SEC. 303. DECLARED VALUE EXCESS-PROFITS TAX FOR TAXABLE YEARS OF LESS THAN TWELVE MONTHS.

(a) Section 601 (relating to the adjusted declared value) is amended by striking out the last sentence thereof.

(b) Subchapter B of Chapter 2 is amended by inserting after section 604 the following new section :

"SEC. 605. INCOME-TAX TAXABLE YEAR OF LESS THAN TWELVE MONTHS.

"(a) GENERAL RULE.—If the income-tax taxable year is a period of less than twelve months on account of a change in the accounting period of the taxpayer, the net income determined under section 602 for such income-tax taxable year (referred to in this section as the 'short taxable year') shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. * * *"

inferred in the statute now being considered. *Journal Publishing Co.*, 3 T. C. 518.

The petitioner urges that the action of the Commissioner is unconstitutional as a taxation of income not earned. Section 711 (a) (3), after providing for placing the income upon an annual basis, further provides that the tax itself shall be in the proportion which the fraction of the year bears to the full year. We view the statute as a whole as a method of arriving at a credit, and not as taxing nonexistent income. We do not find unconstitutionality.

We hold that the Commissioner did not err in placing the petitioner's "short taxable year" on an annual basis.

Reviewed by the Court.

*Decision will be entered for the respondent.*