PEPSI COLA COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3458. Promulgated June 6, 1945.

*Ferdinand Tannenbaum, Esq.*, and *Harry Janin, C. P. A.*, for the petitioner.

*Sydney B. Gambill, Esq.*, and *Laurence F. Casey, Esq.*, for the respondent.

### OPINION.

ARUNDELL, *Judge*: This proceeding involves a deficiency in excess profits tax for a taxable period from January 1 to June 30, 1941, in the total amount of $1,939,447.95. In his notice of deficiency the Commissioner determined a deficiency of $1,449,899.93 and by an amended answer he has demanded an additional deficiency of $489,548.02.

Three questions are raised by the pleadings, as follows:

1. Whether the taxable period from January 1 to June 30, 1941, constitutes a taxable year of less than 12 months, so that the income should be placed on an annual basis as provided in section 711 (a) (3) (A) and (B) of the Internal Revenue Code.

2. If so, has the respondent affirmatively proven that the petitioner is not entitled to the benefits of the computation under the provisions of section 711 (a) (3) (B) as determined in the notice of deficiency so that the income must be annualized under the provisions of section 711 (a) (3) (A)?

3. Has the respondent proven that the amount of $324,231.06 representing bad debt deductions was not restorable to income for 1939 under the provisions of section 711 (b) (1) (J) and (K) of the Internal Revenue Code?

A fourth question raised was whether the sum of $10,500 representing a portion of petitioner's capital stock tax for the year ended June 30, 1941, should be allowed as a deduction in 1940 or in 1941. On brief the respondent, who affirmatively raised the question in his amended answer, appears to have abandoned the issue by conceding that in a computation under section 711 (a) (3) (A) the above sum represents an allowable deduction and by agreeing that under a (B) computation the question is immaterial.

### ISSUE I.

The petitioner herein is the Pepsi Cola Co., a corporation organized under the laws of Delaware. On June 30, 1941, by a statutory merger, the assets of Pepsi Cola Co., the predecessor, also a Delaware cor-

poration, were acquired by Loft, Inc., and thereafter the corporate name of Loft, Inc., was changed to Pepsi Cola Co. Petitioner has continued the operations which had been conducted by Pepsi Cola, the predecessor, whose taxes are here in controversy.

Pepsi Cola Co., the predecessor, kept its books on an accrual method of accounting and prior to 1941 filed its tax returns on a calendar year basis. Its excess profits tax return for the period here in question, January 1 to June 30, 1941, was filed with the collector for the first New York district.

In its excess profits tax return the petitioner used the applicable credits against the excess profits income for the 6-month period here in question. The excess profits net income as so adjusted resulted in a tax in the sum of $13,485.59, which was the amount shown on petitioner's return. The parties have stipulated that the excess profits net income earned during the period January 1 to June 30, 1941, was $6,046,017.26.

The respondent in his notice of deficiency held that the period from January 1 to June 30, 1941, constituted a short taxable year within the meaning of section 711 (a) (3) (A) and (B)[1] of the Internal Revenue Code, added by section 213 of the Revenue Act of 1942.[2] Petitioner assigns error on the part of respondent, claiming that, since the

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(3) Taxable year less than twelve months.—

(A) General Rule.—If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the "short taxable year") shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year.

(B) Exception.—If the taxpayer establishes its adjusted excess profits net income for the period of twelve months beginning with the first day of the short taxable year, computed as if such twelve-month period were a taxable year, under the law applicable to the short taxable year, and using the credits applicable in determining the adjusted excess profits net income for such short taxable year, then the tax for the short taxable year shall be reduced to an amount which is such part of the tax computed on such adjusted excess profits net income so established as the excess profits net income for the short taxable year is of the excess profits net income for such twelve-month period. The taxpayer (other than a taxpayer to which the next sentence applies) shall compute the tax and file its return without the application of this subparagraph. If, prior to one year from the date of the beginning of the short taxable year, the taxpayer has disposed of substantially all its assets, in lieu of the twelve-month period provided in the preceding provisions of this subparagraph, the twelve-month period ending with the close of the short taxable year shall be used. For the purposes of this subparagraph, the excess profits net income for the short taxable year shall not be placed on an annual basis as provided in subparagraph (A), and the excess profits net income for the twelve-month period used shall in no case be considered less than the excess profits net income for the short taxable year. The benefits of this subparagraph shall not be allowed unless the taxpayer, at such time as regulations prescribed hereunder require, makes application therefor in accordance with such regulations, and such application, in case the return was filed without regard to this subparagraph, shall be considered a claim for credit or refund. The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary for the application of this subparagraph.

[2] Applicable to taxable years beginning after December 31, 1939.

return in question is the final return of Pepsi Cola, the predecessor, it covers a period of 12 months.

The same issue, involving an almost identical situation, was before this court in *General Aniline & Film Corporation*, 3 T. C. 1070. That case also involved a Delaware corporation which had reported its income on a calendar year basis and was dissolved by merger on September 30, 1940. We held that the corporation's taxable year was a period of less than 12 months and that the Commissioner did not err in placing its excess profits net income for such period on an annual basis, under the provisions of section 711 (a) (3) (A), *supra*. The petitioner asserts that the decision in the *General Aniline* case, *supra*, was erroneous in that the Court failed to interpret the applicable statutory provisions in the light of Congressional intention and disregarded the background of the amendment. We find no new matter in petitioner's argument which necessitates that we reconsider the problem. The income of a corporation which has completely dissolved or liquidated during a taxable year must be placed on an annual basis. *General Aniline & Film Corporation*, *supra; Kamin Chevrolet Co.*, 3 T. C. 1076.

## ISSUE II.

On June 14, 1943, petitioner filed with the collector an application which, among other things, set forth a "computation of the adjusted excess profits net income and the tax thereon for the twelve month period under Section 711 (a) (3) (B), Internal Revenue Code, which is to be used only in the event it is ultimately determined that the excess profits net income for the year 1941 is to be placed on an annual basis." The computation submitted by the petitioner was as follows:

Excess profits net income for the taxable year begun January 1, 1941, to the date of merger, June 30, 1941, as set forth in Revenue Agent's Report dated September 5, 1942_____ $6,046,017.26

Excess profits net income for the period from July 1, 1940, to December 31, 1940, (determined to be equal to one-half of the excess profits net income, without deduction for income taxes, determined by the Revenue Agent for the year 1940)_____ 3,940,128.91

Excess profits net income for the twelve months from July 1, 1940, to June 30, 1941_____ $9,986,146.17

Excess profits credit for 1941, based upon Supplement A average base period net income_____ $6,217,200.59

Specific exemption_____ 5,000.00

    Total_____ $6,222,200.59

Adjusted excess profits net income_____ $3,763,945.58

Excess profits tax on above_____ $2, 212, 367. 35

Ratio of excess profits net income from January 1, 1941, to June 30, 1941, to excess profits net income for the twelve months ended June 30, 1941_____ 30. 544%

Excess profits tax computed pursuant to the provisions of Section 711 (a) (3) (B) (60.544% of $2,212,367.35)_____ $1, 339, 455. 69

Excess profits tax liability reflected in Revenue Agent's Report dated September 5, 1942, which has not yet been assessed_____ 1, 892, 250. 76

Amount of claim for credit against deficiency_____ $552, 705. 07

The respondent treated the petitioner's application as an appropriate one for a computation of excess profits tax liability under section 711 (a) (3) (B). In his notice of deficiency the respondent determined a deficiency in the amount of $1,449,899.93. The petitioner does not question the amount of the deficiency as determined by the respondent if issue 1 herein is decided adversely to him. In his notice of deficiency the respondent determined petitioner's excess profits net income for the taxable year ended June 30, 1941, as follows:

Computation of Excess Profits Net Income for Period of Less Than Twelve Months

Excess profits net income for period January 1, 1941, to June 30, 1941 _____ $6, 046, 017. 26

Excess profits net income January 1, 1940, to December 31, 1940_____ $6, 111, 198. 11

Add: Income taxes for the year ended December 31, 1940_____ 1, 769, 059. 71

Excess profits net income, January 1, 1940, to December 31, 1940_____ $7, 880, 257. 82

Excess profits net income for period July 1st, 1940 to December 31, 1940 (½ of $7,880,257.82) _____ 3, 940, 128. 91

Excess profits net income for the period of twelve months ended June 30, 1941_____ $9, 986, 146. 17

It is to be noted that section 711 (a) (3) (A) requires a corporation filing an excess profits tax return for a taxable year of less than 12 months to place its excess profits net income on an annual basis by multiplying it by the number of days in a full year and dividing by the number of days in the short taxable year. Subsection (B) is an exception which provides that certain taxpayers having such short taxable year may compute their excess profits tax for the period with reference to their actual adjusted excess profits net income for a 12-month period.

The applicable regulations [3] provide that the annualization shall

---

[3] SEC. 35.711 (a)–4. *Tax for period less than 12 months.*—(a) *Methods of computing tax for short taxable year; allowance.*—Section 711 (a) (3) provides rules, under a general rule and under an exception to such rule, which are applicable to short excess profits tax taxable years for the purpose of determining 12 months' experience and com-

be as prescribed in section 711 (a) (3) (A), except as otherwise authorized by the regulations. It is further provided that if the taxpayer applies to the Commissioner for the benefits of a computation under section 711 (a) (3) (B) and establishes the amount of its adjusted excess profits net income computed for the 12-month period, then (B) is applicable. It is provided that under a subsection (B) computation the tax for the short taxable year shall be reduced to an amount which is such part of the tax computed on the basis of the adjusted excess profits net income which the taxpayer has established for such 12-month period as the excess profits net income for the short taxable year is of the excess profits net income for the 12-month period. The 12-month period, in the instant case, is the 12 months ending with the last day of the short taxable year. Under (B) the income is not placed on an annual basis as provided in (A), but is computed as if the 12-month period were an actual accounting period for the taxpayer. All items which fall in such period must be included even if they are extraordinary in amount or of an unusual nature. The apportionment of items to such 12-month period is to be made in accordance with the method and principles applicable under section 29.47–2 (b) of Regulations 111.

No question is raised concerning the timeliness of petitioner's application which was filed on June 14, 1943. That application shows a reduction in deficiency of some $552,795.07 in a computation under (B) as compared to a proposed deficiency of $1,878,675.17 as shown by the revenue agent's report in a computation presumably under (A). Petitioner uses the income credit method of adjustment rather than the invested capital credit method.

By an amended answer filed October 10, 1944, the respondent put in issue certain new matter which he alleges will result in the imposition of a further excess profits tax liability amounting to $489,548.02.

The first of the respondent's contentions has to do with the computation under section 711 (a) (3) (B), which was the basis used in the notice of deficiency. Briefly, the respondent asserts that the petitioner

puting the tax for such years. A short taxable year is any taxable period of less than 12 months. If the period from the date of incorporation of a corporation to the end of its first accounting period, or the period from the beginning of its last accounting period to the date it ceases operations and is dissolved, retaining no assets, is a period of less than 12 months, such period is a short taxable year. In every case of a short taxable year, whether of a type resulting from a change of accounting period or of a type described in the preceding sentence, the excess profits net income for a period of 12 months used for the purpose of computing the tax under this section shall be used for all other purposes under this subchapter (except as otherwise expressly provided) as the excess profits net income of the taxpayer for the short taxable year. The tax imposed by section 710 (a) (1) (A) for the short taxable year shall be computed under subsection (b) of this section, except as otherwise provided in subsection (c) of this section. The tax under section 710 (a) (1) (B) for a taxable year of less than 12 months is determined on the basis of the actual normal tax and surtax for the taxable year and on the basis of the corporation surtax net income computed for the period for which return was made without placing the net income on an annual basis and computed without regard to the credit provided in section 26 (e) for income subject to excess profits tax.

computed its excess profits net income for the period July 1 to December 31, 1940, by the simple method of declaring that its excess profits net income for such period was 50 percent of its excess profits net income for that year; that the respondent erred in treating the application as a proper one and he erred in determining the deficiency on that basis; and that petitioner's excess profits net income for the last six months of 1940 was substantially greater than for the first six months of that year. Respondent further asserts that in the circumstances petitioner is not entitled to the benefits of a computation under subsection (B), but that the computation should be on the basis of the method prescribed in subsection (A), which results in an adjusted excess profits net income of $12,213,418.27. Other issues also affirmatively raised by the respondent will be discussed hereinafter.

At the hearing petitioner's books of account, made and kept in the regular course of its business, were in the courtroom. Petitioner concedes that the books, taken together, show sales and cost of sales for the first six months of 1940 and for the last six months of 1940, and that they show operating expenses, miscellaneous income, deductions, and net profits for the same period. The respondent's witness, from petitioner's general ledger accounts, illustrated that the ledger shows a net profit for the calendar year 1940 of $7,697,651.05 and of that amount the sum of $4,331,032.63 is reflected as the net income for the last six months of that year. Petitioner agrees that the above are figures reflected by the general ledger from which they were taken, but insists that the ledger accounts are accurate only as they are adjusted by various and sundry entries reflected in the supporting books of account that were maintained by the company, which were then also in the courtroom and to which the respondent had ample access. On the stand the respondent's witness admitted that his findings were not based upon the accounts as reflected in all of the books and that the excess profits net income for the period might be entirely different from the figures shown by the general ledger accounts.

While the petitioner's excess profits tax liability for the taxable year 1940 is not here in controversy, we do not think we would be remiss in pointing out that the respondent made at least eight adjustments in petitioner's book accounts, resulting in the restoration of nearly $700,000 to income, and by at least five adjustments he allowed additional deductions of some $130,000. The petitioner's net income for declared value excess profits tax computation adjusted was declared to be $7,813,812.36, which amounts to approximately $116,161 more than petitioner's total profits for the year as now contended for by the respondent. Petitioner's excess profits tax liability for the year was determined to be $7,880,257.82, and that sum exceeds the book figures here considered as net profit for the entire year by

$182,606. The evidence available to us is not sufficient to permit us to relate the various adjustments made by the respondent for the taxable year 1940 to the respective periods of that year which are here in controversy.

A further indication that such accounts did not correctly reflect net profits for the period is brought to the fore by the respondent's contention that, if the petitioner is entitled to a computation under (B), then the net income for the period is not the amount determined in the original deficiency, nor the amount reflected by the general ledger accounts, but a third amount, arrived at by making various adjustments between the first and second 6-month periods in 1940. Petitioner not only challenged the correctness of the adjustments contended for by the respondent, but advocated other adjustments, which were in turn contested by the Commissioner. These matters include: The time of the accrual of certain advertising expenses amounting to approximately $362,000; whether a partial bad debt deduction of some $200,000 should be allowed; whether an item of approximately $16,785 was a mere accounting adjustment between the parent and subsidiary corporations, or whether it should be taken into petitioner's income; whether a loss on sugar futures in the amount of $90,000 was incurred in the first or second period; whether the sum of approximately $99,146 representing state franchise and income taxes was accrued in the first period and was properly deductible as an expense in the latter part of the year; whether the cost of sales as determined from the ledger accounts and pursuant to a formula applied by the respondent should be increased by the sum of $48,083; and whether petitioner should be allowed a credit amounting to $256,545.65 for dividends taken into income during the second period of 1940. Upon the evidence before us, we are unable to make any disposition of the above items. If we accept the adjustments sought by the respondent, the net income of petitioner for the latter period of 1940 would be about $4,893,214, while if we give effect to those adjustments urged by the petitioner, the income for the same period is approximately $3,820,571, which sum amounts to about $120,000 less than the excess profits net income as determined in the deficiency.

Upon the state of the record it is impossible for us to ascertain that the petitioner's excess profits net income for the last six months of 1940 is some amount different or greater than the sum determined in the notice of deficiency.

It is to be noted the respondent's demand for the increased deficiency is predicated upon a computation under (A), in which the income figures for the respective periods of 1940 are not material. While the respondent argues that he has gone ahead with the evidence to show the proper excess profits net income for the period in question and

that he has established that such sum is different and greater than that embodied in his determination, we are unable to so find. The deficiency as determined by respondent is prima facie or presumptively correct, and when he pleads new matter he accepts the burden of proving the alleged facts. *Sam Cook*, 25 B. T. A. 92; *Henderson Tire & Rubber Co.*, 12 B. T. A. 716; *Schilling Grain Co.*, 8 B. T. A. 1048. Bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability. *Helvering* v. *Midland Mutual Life Ins. Co.*, 300 U. S. 216; *Allen* v. *Commissioner*, 117 Fed. (2d) 364. The moving party does not meet his burden by raising a doubt or pointing to the fact that there is no proof to sustain certain elements. *Texas Pipe Line Co.*, 32 B. T. A. 125; affirmed on other points in 87 Fed. (2d) 662.

The petitioner introduced no evidence, but held to its position that its true excess profits net income was reflected in the original computation. There was no duty upon it to introduce evidence, for the respondent has the burden of proving that his original determination was in error. *Security First National Bank of Los Angeles*, 38 B. T. A. 425; *Rainbow Gasoline Corporation*, 31 B. T. A. 1050. Petitioner argues that the respondent has the burden of proving not only that the original determination was erroneous, but also of establishing that petitioner's excess profits net income for the period is a specified sum different in amount from that originally determined. We need not here concern ourselves with that contention in its entirety, for we can rest our position upon the fact that the respondent has not demonstrated by any convincing evidence or proof that the excess profits net income for the latter period of 1940 was in fact different than the sum determined by him in his original computation. Cf. *Helvering* v. *Taylor*, 293 U. S. 507.

On brief the respondent persists in arguing that the petitioner is not entitled to a computation under (B) because it has failed to establish its net income for the 12-month period ended June 30, 1941. Such argument refers to the formula by which the income figure for the latter portion of 1940 was derived. It may be seriously questioned whether the method used by the petitioner in ascertaining its income for the necessary period is an appropriate one in the circumstances. However, though the method be inappropriate, we do not think it must of necessity follow that the income for the period is in fact some figure in excess of the amount so ascertained. The exact amount of income for the period is the question before us, and we are not convinced, on the showing made, that the amount is different than that originally determined by the Commissioner.

The report of the Ways and Means Committee, Report No. 2333, 77th Cong., 1st sess. (C. B. 1942–2, p. 439), clearly contemplates a

wide range of discretion by the Commissioner in making apportionments to most clearly reflect the income for the 12-month period. Regulations 105 was amended to incorporate the provisions here considered by T. D. 5253, issued March 27, 1943. The Commissioner in his discretion considered the application a proper one and, since it does not appear to be in any manner in violation of the statute, we conclude that the petitioner is entitled to a (B) computation and of necessity we find that the amount of petitioner's excess profits net income for the latter half of 1940 is the amount determined in the notice of deficiency.

## Issue III.

By his amended answer the respondent affirmatively asserts that the petitioner, in computing its excess profits credit based on income in its excess profits tax return for the period January 1 to June 30, 1941, inclusive, restored to income the sum of $329,578.65 [4] in determining its excess profits net income for the calendar year 1939. This amount represented the difference between the sum of $330,009.65 charged off as bad debts in the calendar year 1939 and the sum of $430 claimed as the amount of bad debts charged off in the taxable period here involved. In computing petitioner's excess profits tax credit in the deficiency notice, the respondent restored to income the sum of $324,231.06 [4] in determining petitioner's 1939 excess profits income. This sum represented the difference between $330,009.65 charged off during 1939 and the sum of $5,778.65 representing bad debt deductions applicable to petitioner's short taxable period here in question.

The bad debts charged off by petitioner and allowed by respondent for the year 1939 were as follows:

| | |
|---|---:|
| Pepsi-Cola Bottling Co. of Louisiana | $121,994.48 |
| Pepsi-Cola Bottling Co. of Georgia | 25,231.97 |
| Pepsi-Cola Bottling Co. of Texas | 125,917.09 |
| Pepsi-Cola Bottling Co. of Fort Worth | 38,111.37 |
| Pepsi-Cola Patchoque Bottling Co | 814.07 |
| Jessie L. Livermore | 17,940.67 |
| Total | 330,009.65 |

The following schedule shows sales, cost of sales, and gross profit for the years 1936 to 1939, inclusive:

| | 1936 | 1937 | 1938 | 1939 |
|---|---|---|---|---|
| Sales | $4,271,062.59 | $7,788,938.73 | $9,280,478.69 | $13,689,455.15 |
| Cost of sales | 1,478,499.33 | 2,912,663.97 | 3,225,240.59 | 4,604,891.39 |
| Gross profit | 2,792,563.26 | 4,876,274.76 | 6,055,238.10 | 9,084,563.76 |

---

[4] Discrepancies of $1 and $.06 are noted.

Some portion of the above debts owed petitioner by the respective companies and charged off represented moneys advanced to those companies for the purpose of enabling them to purchase equipment and other assets necessary to the conduct of their business. Advances for advertising purposes were included. The respective debtor companies, along with about 500 other companies, operated under a bottling franchise in specific territories and purchased the syrup for concentrates from the petitioner company.

The respondent argues that the petitioner has not established that the increase in the amount of bad debts charged off in 1939 was not a consequence of an increase in the gross income of the petitioner in its base period or a decrease in the amount of some other deduction in its base period, and was not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the petitioner. It is further stated that that increase was a consequence of one or the other of the above and that the respondent erroneously restored the said $324,231.06 to income. The applicable statute is set out in the margain.[5]

Here again the respondent conducts his case on the theory that "the burden is squarely upon the taxpayer to establish that the abnormality or excess is not a consequence of one or more of the said factors." The taxpayer, on the other hand, denies that there is any burden on it, but takes the view that the respondent must show that the increase in the amount of the debts charged off in 1939 was a consequence of one or the other of the above factors, since this is new matter raised in the amended answer and the respondent has the burden of proof.

The respondent argues that, while it may be difficult for petitioner to establish that the increase was not a consequence of any of the named circumstances, the carrying of the burden any further than he has done here is impossible, because it would require proof of matters peculiarly

---

[5] SEC. 711. EXCESS PROFITS NET INCOME.

   \*       \*       \*       \*       \*       \*       \*

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)):

   \*       \*       \*       \*       \*       \*       \*

(J) Abnormal Deductions.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph,

   \*       \*       \*       \*       \*       \*       \*

(K) Rules for Application of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J)—

   \*       \*       \*       \*       \*       \*       \*

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

and exclusively within the taxpayer's knowledge. We are not impressed with such argument, and to permit the respondent so simply to shrug off the burden would violate the rules of judicial procedure. The proof of the positive is upon the respondent. See *William Leveen Corporation*, 3 T. C. 593, where we held that the taxpayer therein had not proven that the abnormality in the amount of the deduction was not a consequence of an increase in its gross income in its base period under the circumstances there before us.

The evidence before us does not furnish a basis sufficient to overcome the presumptive correctness of the Commissioner's original determination. There are too many variables in the situation. A perusal of the applicable Treasury Regulations, Regulations 112, section 35.711 (b)-2, subsection (b) of which is set out in the margin,[6] reveals that the force and effect of the provision is such that the respondent had access to full information from which he could have ascertained whether or not the abnormal debts should have been restored to income in the first instance. We must assume that the evidence furnished him warranted his decision in the matter. Certainly, the information available here is far less comprehensive.

In these circumstances the respondent can draw no support from the rationale of *Insular Sugar Refining Corporation*, 3 T. C. 922, and like cases. The respondent has failed to show that the abnormal debts were a consequence of any one or more of the enumerated factors. On this issue the petitioner must prevail.

The respondent further alleged that the petitioner in its return for the short taxable period ended June 30, 1941, claimed, and that the respondent erroneously allowed, a capital stock tax deduction in the amount of $10,500. The issue was joined. The record contains no evidence whatsoever concerning this item. On brief, the respondent states that "if it is determined that petitioner is entitled to the benefits of section 711 (a) (3) (B) of the Internal Revenue Code, this issue

---

[6] (b) STATEMENT REQUIRED.—If in computing its excess profits net income for a taxable year in the base period, the taxpayer claims the disallowance under section 711 (b) (1) (H), (I), or (J) of any amount previously allowed as a deduction, there shall be submitted a full statement showing the computation of the amount to be disallowed, the prices and gross sales of the taxpayer's product, and the condition of the taxpayer's business which demonstrates that the disallowed amount is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer. This statement shall be in duplicate and shall include the following: (1) the computation of the amount disallowed, showing the amount of the class of deductions in the base period taxable year for which any part of such amount is disallowed, the average amount of such class for the four preceding taxable years or for such taxable years as the taxpayer is required to use in determining this average amount, and the excess amount of deductions disallowed ; (2) a description and the amount of each item included in such class of deductions for the taxable year for which such deductions are disallowed and for the taxable years in the test period, with the amount of each and a description thereof ; (3) the amount of such class and the amount and description of each item in that class for the taxable year for which the excess profits tax is being computed ; and (4) all other facts upon which the taxpayer relies.

is not material. If it is held that petitioner's excess profits net income for its short taxable period should be annualized as provided by section 711 (a) (3) (A), then the $10,500 is an allowable deduction for the period January 1, 1941 to June 30, 1941, and respondent's claim for an increased deficiency on account of this item should not be allowed." *First National Bank in St. Louis,* 1 T. C. 370. We think such view is correct.

*An excess profits tax deficiency in the amount of $1,449,899.93, which is the amount determined by the respondent in his deficiency notice, is here redetermined.*