## PEPSI COLA CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 177.

Circuit Court of Appeals, Second Circuit.

June 14, 1946.

Mark Eisner and Ferdinand Tannenbaum, both of New York City (Z. N. Diamond, of Baltimore, Md., and George Lewis, of New York City, on the brief), for petitioner.

Sewell Key, Acting Asst. Atty. Gen., and J. Louis Monarch and Harry Baum, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, CLARK, and WOODBURY, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the excess profits tax liability of a former corporation, for convenience referred to as the old company, which was merged with the petitioner on June 30, 1941, pursuant to the statutes of Delaware. By the merger the petitioner acquired all the old company's assets and assumed its liabilities, including that for excess profits tax for the period of its existence in 1941. General Aniline & Film Corp. v. Commissioner, 3 T.C. 1070. The ques-

tion presented is whether the Tax Court was correct in placing upon an annual basis under § 711(a) (3) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 711(a) (3), the excess profits net income of the old company for the period from January 1 to June 30, 1941.

The facts are not in dispute. Prior to 1941 the old company filed its tax returns on the calendar year basis. In its excess profits tax return for the six-month period ending June 30, 1941, it used the income credit method of adjustment rather than the invested capital method, and offset the applicable credits against its excess profits net income for the six-month period without placing such income on an annual basis as provided in § 711(a) (3) of the Code. It reported an excess profits tax of $13,485.59. The commissioner determined a deficiency of nearly one and a half million dollars. The petitioner does not question this determination if section 711(a) (3) is applicable. The Tax Court held that the section does apply and sustained the deficiency.

Section 711(a) (3), as amended by section 213 of the Revenue Act of 1942, 56 Stat. 908, 26 U.S.C.A. Int.Rev.Code, § 711(a) (3), and made applicable to taxable years beginning after December 31, 1939, reads as follows:

"(3) Taxable year less than twelve months.

"(A) General rule. If the taxable year is a period less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the 'short taxable year') shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year."

The condition which calls the section into operation is that "the taxable year is a period less than twelve months." To the laymen we think it would seem too plain for disputation that this condition is satisfied in the case of a corporation accustomed to file tax returns on the calendar year basis which ceased to exist by reason of a statutory merger on June 30, 1941, and makes a final return covering the six months of its existence during that year. The petitioner argues, however, that language similar to that expressing the condition which makes section 711(a) (3) applicable had long been interpreted by the courts and by the commissioner to mean that a final return of a corporation whose existence ceased within a calendar or fiscal year was a return for a full twelve months. Primary reliance is placed on Bankers' Trust Co. v. Bowers, 2 Cir., 295 F. 89, 31 A.L.R. 922. That case involved section 226(c) of the Revenue Act of 1921, 42 Stat. 227, which provided that "In the case of a return for a period of less than one year the net income shall be placed on an annual basis" in the manner therein stated. The question for decision was whether this section applied to the last return of a decedent and the first return of his estate for the year in which the decedent's death occurred. It was held that it did not, because reading section 226 as a whole it was plain that subdivision (c) was intended to apply only to a taxpayer who voluntarily changed his accounting period under subdivision (a). The correctness of this interpretation was expressly recognized in section 226(c) of the Revenue Act of 1924, 43 Stat. 281, and in the corresponding sections of all later Acts, including the Internal Revenue Code where it appears as section 47(c), 26 U.S.C.A. Int.Rev.Code, § 47(c).[1] Moreover, section 200 of the Revenue Act of 1924, 43 Stat. 254, now section 48(a) of the Code, 26 U.S.C.A. Int.Rev.Code, § 48(a), enlarged the definition of "taxable year" to include "in the case of a return made for a fractional part of a year * * * the period for which such return is made"; and this has been held to apply to returns covering fractional parts of a year in situations oth-

---

[1] See also Treas. Reg. 65, Art. 431 under the 1924 Act, and Treas. Reg. 111, section 29.47-1 under the Code.

er than those in which there has been a change in the accounting period. See General Aniline & Film Corp. v. Commissioner, 3 T.C. 1070, 1073 and cases there cited. Accordingly we think the Bankers' Trust decision affords the petitioner no aid in support of the construction contended for with respect to section 711(a) (3).

Not only is the language of that section literally applicable to the final return of a corporation which ceased to exist during a calendar year but also the purpose of the legislation would be frustrated if the excess profits net income for the short taxable year were not placed on an annual basis. The tax is imposed on "the adjusted excess-profits net income" (section 710, 26 U.S.C.A. Int.Rev.Code, § 710). The most important adjustment factor is the "excess profits credit" which may be based either on income (section 713, 26 U.S.C.A. Int.Rev.Code, § 713) or on invested capital (section 714, 26 U.S.C.A. Int.Rev. Code, § 714). Under the income method, used in the case at bar, the credit is 95% of the "average base period net income," which is arrived at by averaging the income of the four year base period. To deduct 95% of the income of a hypothetical full year from the excess profits net income earned during the short taxable year would give the taxpayer an advantage out of harmony with the statutory scheme of taxation. To avoid giving it such an advantage annualization of the excess profits net income is necessary. The language of the section is literally applicable; it cannot reasonably be read to limit annualization to cases of a change of accounting and the legislative history shows that it was not so understood by the committee report which accompanied the Revenue Act of 1942. See H.Rep. No. 2333, 77th Cong., 2d sess. pp. 139, 140. Nor does the fact that the commissioner's first interpretation of the section in § 30.711(a)-4 of Regulations 109 specified only one instance of a short taxable year support the petitioner's argument that final returns were returns for the full period of twelve months, nor preclude the commissioner from later specifying other instances which are within the statutory language, as· he did by T. D. 5253, 1943 Cum.Bull. 673, 682, 683.

The Tax Court correctly held the section applicable to the case at bar. Its decision is affirmed.