R. V. AYCOCK, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE M. McGREW, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16172, 16173.    Promulgated October 29, 1948.

*Stanley C. Miner, Esq.,* for the petitioners.
*George E. Gibson, Esq.,* for the respondent.

## OPINION.

Opper, *Judge*: Petitioners seek the advantage of computing the excess profits tax of their transferor, Crystal Products, Inc., under the provisions of section 711 (a) (3) (B),[1] rather than under section 711 (a) (3) (A),[1] the section used by respondent in computing the

[1] SEC. 711. EXCESS PROFITS NET INCOME.

(a) Taxable Years Beginning After December 31, 1939.—The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

\*       \*       \*       \*       \*       \*       \*

(3) Taxable year less than twelve months.—

(A) General Rule.—If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the "short taxable year") shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year.

(B) Exception.—If the taxpayer establishes its adjusted excess profits net income for the period of twelve months beginning with the first day of the short taxable year, computed as if such twelve-month period were a taxable year, under the law applicable to the short taxable year, and using the credits applicable in determining the adjusted excess profits net income for such short taxable year, then the tax for the short taxable year shall be reduced to an amount which is such part of the tax computed on such adjusted excess profits net income so established as the excess profits net income for the short taxable year is of the excess profits net income for such twelve-month period. The taxpayer (other than a taxpayer to which the next sentence applies) shall compute the tax and file its return without the application of this subparagraph. If, prior to one year from the date of the beginning of the short taxable year, the taxpayer has disposed of substantially all its assets, in lieu of the twelve-month period provided in the preceding provisions of this subparagraph, the twelve-month period ending with the close of the short taxable year shall be used. For the purposes of this subparagraph, the excess profits net income for the short taxable year shall not be placed on an annual basis as provided in subparagraph (A), and the excess profits net income for the twelve-month period used shall in no case be considered less than the excess profits net income for the short taxable year. The benefits of this subparagraph shall not be allowed unless the taxpayer, at such time as regulations

deficiency. They rest the claim to use the provisions of subsection (B) on the fact that Crystal Products had a short taxable year commencing in April 1942, the date of its organization, and ending on its dissolution four months later. Not only would this require the allowance of full yearly credits against a mere fraction of a year's income, contrary to the principle of a number of recent cases,[2] but the plain language of the section convinces us that the claim is inadmissible.

The opening phrase of the subsection posits as a condition that the taxpayer must *establish* "its adjusted excess profits net income for the period of twelve months," where such a 12-month period exists from the beginning of the short taxable year. Petitioner's transferor could obviously not comply with that requirement. The only alternative, which is one specifically applicable to a taxpayer who "has disposed of substantially all its assets" prior to the end of such a 12-month period is that in such a case it is permitted "in lieu of the twelve-month period provided in the preceding provisions" to use "*the twelve-month period ending with the close of the short taxable year.*" (Emphasis added.) It is equally obvious that there is no such 12-month period in this case and hence that the available information does not permit the petitioner to comply with the requirements of subdivision (B). The exception being inapplicable, resort must be had to the general rule and to the computation provided by subsection (A).

Even if it were thought that the statute on its face is susceptible of alternate interpretations, and hence presents an ambiguity, recourse to the congressional purpose and legislative history makes the foregoing conclusion doubly certain. The general rule for a short calendar year incorporated in subsection (A) resorts to a mathematical or proportionate computation for the ascertainment of the tax. That such a mechanical approach might be at war with actual experience being a manifest possibility, subsection (B) was designed to permit a corporation with a business history of an entire year to have its tax computed by reference to that actual experience. For this purpose, the data of an actual 12-month period including at beginning or end the short taxable year are required by the statutory computation, from which are to be deducted the stated full year's specific exemption and credit. The only purpose of subsection (B) being thus involved with the existence of an actual history and experience, it would be utterly opposed to letter and spirit alike to consider it applicable to a taxpayer for whom that material is lacking. See

---

prescribed hereunder require, makes application therefor in accordance with such regulations, and such application, in case the return was filed without regard to this subparagraph, shall be considered a claim for credit or refund. The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary for the application of this subparagraph.

[2] *General Aniline & Film Corporation,* 3 T. C. 1070; *Kamin Chevrolet Co.,* 3 T. C. 1076.

*Pepsi Cola Co.*, 5 T. C. 190; affd. (C. C. A., 2d Cir.), 155 Fed. (2d) 921.

An examination of the legislative history bears this out. In Ways and Means Committee Report, H. Rept. No. 2333, 77th Cong., 2d sess., pp. 139, 140 (1942 Act), appears the following explanation of the amendment which became 711 (a) (3) (B):

A corporation filing an excess profits tax return for a taxable year of less than 12 months is required under section 711 (a) (3) of existing law to place its excess profits net income on an annual basis by multiplying it by the number of days in a full year and dividing by the number of days in the short taxable year.

This section of the bill amends section 711 (a) (3) of the Code to provide that a taxpayer having a short taxable year may compute its excess-profits tax for the short period with reference to its *actual* adjusted excess-profits net income for a 12-month period. This provision affords relief similar to that granted by the amendments contained in section 126 of the bill with respect to the income tax. [Emphasis added.]

Section 126, above referred to, became section 135 of the Act of 1942 and evidences a similar statutory scheme:

If the taxpayer (other than a corporation) was not in existence at the end of the 12-month period, or if the taxpayer is a corporation and prior to the end of the 12-month period it has distributed substantially all its assets, then, *in order to determine an actual 12-month income experience*, it is necessary to use the 12-month period ending with the last day of the short period. * * * [Emphasis added. Ways and Means Committee Report, H. Rept. No. 2333, *supra*, 89.]

At the hearings before the Senate Finance Committee on the act, J. O'Brien, House Legislative Counsel, stated with reference to the statute in question:

Page 201, line 9 provides a rule for putting the excess profits net income of a corporation having a short taxable year on an annual basis. The rule is substantially similar to the one which I explained yesterday in connection with the ordinary normal and corporation surtax. [Hearings before the Committee on Finance, 77th Cong., 2d sess., p. 103.]

With reference to the income tax provision, his testimony the day before had been as follows:

* * * It is conceivable that by reason of that rule there might be some hardship to a corporation whose income happened to fall in the short period and they would not normally earn at the same rate during the succeeding part of the year. It is proposed in such cases to provide that they can take the 12 months beginning with the beginning of the short period and use that as the measure of the tax for the short period, or in cases in which the corporation was not in existence for 12 months at least, after the end of the short period, they can take the back period beginning [ending?] with the end of the short period. In other words, the corporation has got an opportunity to show, *in case it continues in existence, what would be its income for the full 12 months*, and not have this formula for the ascertainment of the amount of what the income would be if it was put on an annual basis. [Emphasis added. Hearings before the Committee on Finance, 77th Cong., 2d sess., p. 75.]

We conclude that the deficiency against the corporation, and hence the liability of petitioners as transferees, must be sustained.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

VAN FOSSAN, *J.*, concurs only in the result.

———

JOHNSON, *J.*, dissenting: In sustaining respondent's determination, the majority rely primarily on the view that, for the provisions of section 711 (a) (3) (B) to be applicable:

\* \* \* the taxpayer must *establish* "its adjusted excess profits net income for the period of twelve months," where such a 12-month period exists from the beginning of the short taxable year.

And, because "there is no such 12-month period in this case," they conclude that "the available information does not permit the petitioners to comply with the requirements of subdivision (B)" and that the general rule of subsection (A) must therefore be applied.

In my opinion the plain language of subsection (B) not only fails to support this construction, but by implication contradicts it. Petitioners complied with all formal requirements prescribed for the benefits of (B). If it had not distributed substantially all of its assets within 12 months from the beginning of its short period, there would seem to be no doubt of its right to the benefits of (B), even though it had passively held title to the assets for a year after the beginning of the short period without receiving income or incurring expenses. But, because it did make distribution, the latter provisions of (B) direct that "the twelve-month period" be counted backward from the end of the short period instead of forward from its beginning. In either event the adjusted excess profits net income is to be "computed as if such twelve-month period were a taxable year." Such language negatives the view that it must be a year potentially subject to tax. The section does not even refer to income experience or corporate existence. It does refer to a distribution of assets as an event or circumstance which requires a variation in the method of computation.

Congress could have conditioned an application of (B) on a full 12-month period of business operation, income experience or corporate existence, comprising the taxable short period. Perhaps such a limitation would have afforded a sounder or more logically harmonious basis for computation of the short period tax. But, as Congress failed to do so, the defect, if such it be, is not a subject for judicial remedy. The majority seek to buttress their conclusion by reference to legislative history. The quoted excerpts from hearings and committee reports, relating to a different section, lend only inferential and dubious support. But, as subsection (B) in my opinion literally pre-

sents no ambiguities, and, if literally applied here, is not "plainly at variance with the policy of the legislation as a whole," *United States* v. *American Trucking Corporation*, 310 U. S. 534, recourse to legislative history for its construction is not warranted, cf. *Crossett Western Co.*, 4 T. C. 783; affd. (C. C. A., 3d Cir.), 155 Fed. (2d) 433; *John H. Watson, Jr.*, 27 B. T. A. 463, and the respondent erred in applying subsection (A).