Hewitt Rubber Company of Pittsburgh v. Commissioner. M. S. Lambert, Transferee v. Commissioner. Margaret E. Starr, Transferee v. Commissioner.
Hewitt Rubber Co. v. Comm'r
Docket Nos. 8239, 8240, and 8241. United States Tax Court
1947 Tax Ct. Memo LEXIS 27; 6 T.C.M. (CCH) 1258; T.C.M. (RIA) 47317; November 28, 1947, Decided. T. J. McManus, Esq., William Wallace Booth, Esq., and A. G. Wallerstedt, C.P.A., 747 Union Trust Bldg., Pittsburgh, Pa., for the petitioners. George C. Lea, *28 Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of income, declared value excess-profits and excess-profits taxes as follows: Declared Value
Income
Excess-
Excess-
Tax
Profits Tax
Profits tax
1941
$1,935.89
$1,186.72
$ 3,440.14
1942
None
1,626.65
12,204.53
Total
$1,935.89
$2,813.37
$15,644.67
The issues for decision relate to the reasonableness of the salaries paid the employee-stockholders; the amount of expenditures for entertainment; and the effect upon the computation of base period income of an item of salary accrued but not paid in one of the base period years. There is no dispute as to the liability of the individual petitioners as transferees. Findings of Fact Petitioner, Hewitt Rubber Company of Pittsburgh, hereinafter sometimes for convenience called petitioner or the "company", is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal office at Pittsburgh, Pennsylvania. Its returns for the periods here involved were filed with the collector of internal revenue for the twenty-third *29 collection district of Pennsylvania, at Pittsburgh, Pennsylvania. Petitioners Margaret E. Starr and Max S. Lambert are individuals with residence in Pittsburgh, Pennsylvania. During the periods here pertinent and until its dissolution on December 31, 1944, as hereinafter related, the outstanding stock of the company consisted of 90 shares. Prior to the death of her husband on May 5, 1939, petitioner Margaret E. Starr owned 30 shares of the stock and her husband owned 60 shares, and upon his death she became owner of all of the outstanding capital stock of the company. At the date of the death of Margaret Starr's husband, petitioner distributed only the products of Hewitt Rubber Corporation of Buffalo, hereinafter sometimes called Hewitt, which by written agreement had the power to terminate or renew petitioner's franchise at its option. Before his death her husband had recommended three men to work with Margaret Starr in the business. None of these men was interested. Hewitt was afraid to have Margaret Starr conduct the business alone and they insisted on sending a man to be manager of the business if he was acceptable to Margaret Starr. They sent Max Lambert. On or before *30 July 20, 1939, Margaret Starr agreed to transfer 45 shares of the 90 shares of the capital stock of the company outstanding to Max Lambert. That obligation was one of the terms of an oral agreement which Margaret Starr and Max Lambert entered into with the company on July 20, 1939. At all times thereafter, and during the taxable years here in question, Margaret Starr and Max Lambert each owned 50 percent of the outstanding stock of the company. For the taxable years 1941 and 1942, the compensation to Margaret Starr and Max Lambert was paid pursuant to the contract entered into between them and the company. This contract reduced to writing the oral agreement which the parties thereto had entered into on July 20, 1939. Articles "TWO" and "THREE" of such contract provide as follows: "TWO. (a) Mr. Lambert shall receive a drawing account at the rate of $7200.00 per year, payable $300.00 on the 15th and last days of each month, as an advance against his ultimate salary and other compensation. "(b) Mrs. Starr shall receive a drawing account at the rate of $6,000.00 per year, payable $250.00 on the 15th and last days of each month, as an advance against her ultimate salary and other *31 compensation. "THREE. (a) The amount available for officers' salaries in excess of the above drawing account of $13,200.00 shall be distributed as follows and in the following order: Mr. Lambert
Mrs. Starr
(1) The first $1500.00
50%
50%
(2) The next $2000
60%
40%
(3) The balance
70%
30%
"No dividends shall be available for payment to stockholders until the total drawing accounts and salaries of Mr. Lambert and Mrs. Starr combined shall reach $20,000.00. After reaching the first $20,000.00 compensation, the officers' salaries shall be increased by $600.00 for each $1,000.00 of net profit before income taxes. "(b) All net income available for dividends up to a total of 30% on capital stock outstanding shall be paid as dividends. The balance of net earnings may be paid as dividends in whole or in part, or retained as surplus in the company, at the discretion of Mr. Lambert. Dividends, when paid, shall be paid on the basis of 70% to Mr. Lambert and 30% to Mrs. Starr." For each of the years hereinafter mentioned, the company paid Margaret Starr and Max Lambert as compensation the following amounts: Amount of Compensation
Margaret
Max S.
Year
E. Starr
Lambert
1936
$ 2,700.00
1937
4,800.00
1938
850.52
1939
5,888.22
$ 3,200.00
1940
8,550.00
9,750.00
1941
12,693.03
20,715.30
1942
13,188.94
21,872.42
1943
8,278.31
10,849.38
1944
6,891.11
8,196.57
*32 In the years 1940 through 1944 the company paid its stockholders $120,985.06 as compensation, plus travel and entertainment expenses exceeding $24,088.07, plus $6,660 as dividends, and during the same period a total of $5,916.81 was paid to the Federal Government in taxes. During the taxable years 1941 and 1942, all of the products sold by the company were subject to priorities, and such period was a seller's market due to war conditions. The priorities to a great extent determined to whom goods were sold. The company sold the products for Hewitt and it sold products of the Rockwood Company and the Chicago Belting Company. These goods included conveyors and conveyor belts, industrial hoists, sheet goods, and pulleys and drives. Margaret Starr devoted only part time to the business during 1941 and 1942. She was not familiar with the details of the company's business and seldom went to the office, and did not go into the mills to call upon the mill managers or superintendents. Her job was selling by keeping in touch with customers by personal entertaining. She was well acquainted with the wives and families of purchasing agents, and attempted to keep these friendships alive. *33 She frequently entertained and made gifts to the Ochsenhirts. F. W. Ochsenhirts was a purchasing agent for the Jones and Laughlin Steel Co. Petitioner had no way to give reciprocal business in Pittsburgh and it was a small company and did not advertise. Margaret Starr is a graduate of Seton Hill College. She has been president and treasurer of petitioner since May 5, 1939. Max Lambert is 49 years old and has a Ph. D. degree from the University of Chicago. He also has a Bachelor of Engineering degree and took postgraduate work at the Armour Institute of Chicago. For seventeen years prior to entering petitioner's employ he was sales engineer of the Robins Conveying Belt Company, a company affiliated with Hewitt since 1925. He had been in charge of the Robins' Detroit offices for two years, manager of Merchandise Sales for Robins for two years, and he had handled advertising, including conventions and convention exhibits. He was general manager of petitioner from July 20, 1939, to December 31, 1944. He directed all of petitioner's activities, managed the sales, office, and shop. He formulated petitioner's policies. He made the engineering recommendations to customers, prepared engineering *34 specifications and kept in touch with operating personnel. Margaret Starr and Max Lambert were responsible for practically all the sales made by petitioner during the period in question. In 1941 and 1942 petitioner also had in its employ a salesman in training, an office manager and a shop man (a belt mechanic) and one or two stenographers. Petitioner's sales, compensation to officers, net income, and the ratio of officers' compensation to sales, for 1936 through 1944, are disclosed in the following table: Officers' Compensation
Net Income
After
Officers'
Margaret E.
Max S.
Total to
Compen-
Year
Net Sales
J. G. Starr
Starr
Lambert
Officers
sation
1936
$132,905.66
$15,959.33
$ 2,700.00
$18,659.33
$ 3,981.11
1937
158,970.59
19,549.14
4,800.00
24,349.14
3,733.59
1938
100,233.23
10,202.36
850.52
11,052.88
(1,025.09)
1939
101,746.15
2,395.62
* 5,888.22
$ 3,200.00
11,483.84
( 504.96)
1940
150,587.80
8,550.00
9,750.00
18,300.00
( 453.36)
1941
257,736.40
12,693.03
20,715.30
33,408.33
8,446.53
1942
278,329.43
13,188.94
21,872.42
35,061.36
9,635.86
1943
137,257.08
8,278.31
10,849.38
19,127.69
(1,269.91)
1944
136,019.42
6,891.11
8,196.57
15,087.68
( 239.00)
*35 Officers' Compensation
Ratio of
Officer's Compen-
sation to
Net Sales
1936
14.04
1937
15.32%
1938
11.03%
1939
** 11.29%
1940
12.15%
1941
12.96%
1942
12.60%
1943
13.94%
1944
11.09%
Deduction of compensation for Margaret Starr and Max Lambert for 1941 and 1942 was claimed by petitioner, and allowed and disallowed by respondent as follows: 1941
1942
Claimed
$33,408.33
$35,061.36
Allowed
21,045.00
21,045.00
Disallowed
$12,363.33
$14,016.36
The amounts allowed by respondent are reasonable salaries for 1941 and 1942 for the services performed by the respective officers. Expenses for travel and entertainment for 1940 through 1942 were claimed by petitioner, and allowed and disallowed by respondent as follows: 1940
1941
1942
Expenses Claimed
$3,894.60
$5,056.11
$5,152.21
Expenses Allowed
3,113.39
3,860.66
3,870.82
Expenses Disallowed
781.21
1,195.45
1,281.39
Margaret Starr made note of her traveling and entertainment expenses at the end of a month *36 and itemized them on vouchers which she submitted to the office manager, who reimbursed her. Neither she nor Max Lambert was able to locate the vouchers for August, 1940, the entire year 1941, August and September, 1942, and January, May, September, October, and December, 1944. On her personal income tax return for 1941 appears the following: BUSINESS EXPENSES
Automobile used for business
Gas and Oil
$272.14
Depreciation
385.75
$675.89
Sales Promotion and Devel-
opment, Entertainment of
Customers not reimbursed
to me by my employer
127.50
TOTAL BUSINESS EXPENSES
$785.39 Petitioner does not reimburse her for any automobile expense. Max Lambert keeps a diary in which he entered daily traveling and entertainment expense incurred except items for which he is billed monthly. Vouchers were submitted by him to the cashier for monthly totals, and reimbursements were made. Lambert could not locate his diaries for 1940 and 1941. The amounts allowed by respondent represent the amounts substantiated and 75 percent of the entertainment and traveling expenses which were claimed by petitioner but unsubstantiated by vouchers. For the taxable year 1939 petitioner *37 reported a net loss of $504.98 on its return which it filed. This was after deducting as salary an accrual of $2,222.22 which was never actually paid in cash, but was canceled and credited to sur7lus on August 31, 1940. For 1939 a revenue agent recommended disallowance of the $2,222.22 of unpaid salaries and concluded that petitioner had taxable net income of $1,717.26 in 1939. His explanation was: "Under date of May 5, 1939, Mr. J. G. Starr died. On Dec. 31, 1939 when books were closed on [down] item of accrued Officers' salaries was charged to J. Garnet Starr (Mrs. Margaret Starr) and this was included in total salaries of $11,483.84 deducted from income in determining net loss. "This accrued salary of $2,222.22 was not paid on 8/31/41 [08/31/41] this item was transferred to the Surplus account. It is disallowed as a deduction in 1939 under Sect. 19:24-6 Reg. 103." Respondent made no claim for the tax due shown by the revision of the 1939 income, but made such a claim to show there was no net-loss carry-over. Respondent now concedes that on the basis of petitioner's 1939 return it is entitled to a net-loss carry-over in the amount of $504.96. Petitioner had $5,974.31 *38 cash on hand and $8,334.07 accounts receivable at the end of 1939. Upon the dissolution of the company on December 31, 1944, all of its assets amounting to $27,753.57 in value were transferred to Margaret Starr and Max Lambert in consideration of the cancellation of their capital stock in the company. Margaret Starr and Max Lambert are liable as transferees for the tax due by petitioner. Opinion We are again presented with the problem of what constitutes reasonable salaries of officer-employee-shareholders of a close personal service corporation whose profits were war inflated. See Wood Roadmixer Co., 8 T.C. 247. As in the Wood case, there is no showing here that the large amount of business was attributable to any unusual activity on the part of the employees, and obviously the fact that the salaries were fixed by an arrangement which might have been at arm's-length between Margaret Starr and Max Lambert cannot serve to demonstrate reasonableness as though non-officer stockholders' interests had also been involved. Considering the entire record, including the relationship of the parties to the company, the nature of the employment contract, evidence of the *39 work performed, the absence of any substantial dividends, and the sellers' market occasioned by the system of government priorities in the rubber industry, we do not believe that petitioner has established the reasonableness of any greater total salary figure than that allowed by respondent. It may be that the increased volume of business materially added to the work performed by Lambert; but the admitted ease of securing orders and the apparent concentration of Mrs. Starr's activities to that field must correspondingly have reduced her actual value to the company. We make no attempt to allocate total allowable salary as between the two officers. And there is no evidence of any higher salaries being paid for corresponding services in comparable businesses. Nor do we feel that the record discloses that respondent was in error in disallowing in part the travel and entertainment expenses claimed for the years in question. He approved deductions of $3,860.66 out of $5,056.11 claimed for 1941 and $3,870.82 out of $5,152.21 claimed for 1942. The records to substantiate Margaret E. Starr's disbursements were incomplete to an extent not apparently necessary, even considering the nature of *40 the claimed expenses, and we are not satisfied from his testimony that Lambert has not included unallowable expense of personal transportation in his claim. The amounts approved reflect an allowance of 75 percent of items unsubstantiated by convincing proof. The doctrine of George M. Cohan v. Commissioner (C.C.A., 2nd Cir.), 39 Fed. (2d) 540, cannot be said on the present record to require more. The last issue relates to a deduction for salary to Margaret E. Starr, accrued in 1939 but not actually paid, which is said to be involved in the computation of excess-profits for 1940 through 1944 and the amount of carry-over and carry-back of the unused portion of the credits. Petitioner first claimed the deduction of the $2,222.22 salary item for 1939 resulting in a loss for that year of $504.98. A revenue agent recommended disallowance of the deduction, with the result of a net income of $1,717.26 for 1939. Respondent now "concedes" the loss and chooses to accept petitioner's return as filed, insisting thus on the smaller base period income; and petitioner seeks the advantage of the originally proposed revision, and of the disallowance of the net-loss carry-over from 1939 *41 incorporated in the deficiency notice presently under review. It may be that respondent's conclusion in the latter respect is equivalent to a determination that there was no net loss in 1939. We shall assume as much for present purposes and grant further that this is presumptively correct, and binding upon him as well as upon the petitioner; so that where he purports to change his determination the burden of proof is upon him. See M. J. Sullivan, 2 B.T.A. 1012; Pepsi-Cola Co., 5 T.C. 190, 198; Security First National Bank of Los Angeles, Executor, 38 B.T.A. 425, 434. In no case, however, does the obligation imposed by the burden-of-proof rule require that the evidence be produced by any particular party. The record as a whole must be examined and the burden is met if the necessary evidence exists, whoever produced it. L. Schepp Co., 25 B.T.A. 419. The most that can accordingly be said, if we accept petitioner's view that respondent by failing to confer upon petitioner the benefit of a net-loss carry-over thereby determined that it had *42 no net loss in 1939, is that the burden of proving the item deductible would fall upon respondent. [1] Assuming this result in petitioner's favor for the sake of the argument, we think that burden has been met. The record shows that the item in dispute was salary accrued on the corporation's books in 1939 in favor of Margaret Starr but not paid, the disallowance of which was recommended under Regulations 103, section 19.24-6 dealing with the application of section 24 (c), Internal Revenue Code. [2]
*43 The record further shows that on December 31, 1939, the last date of petitioner's relevant taxable year and for two and onehalf months thereafter, Margaret Starr did not own, directly or indirectly, more than 50 percent of petitioner's stock. It follows that the condition of section 24 (c) (3) that the taxpayer and the person to whom payment is made are not persons between whom losses would be disallowed under section 24 (b) is not met. The latter disallows losses "between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual." Finally, the statutory restriction on the deduction imposed by section 24 (c) does not become operative unless all three conditions specified coexist. Anthony P. Miller, Inc., 7 T.C. 729, 739 (reversed other ground (C.C.A., 3rd Cir.), 164 Fed. (2d) 268 (Nov. 18, 1947)). We conclude that it affirmatively appears that the salary item in question was not disallowable and hence that the net loss of $504.98 for 1939 was actually sustained *44 by petitioner. Having satisfied ourselves that the deduction originally taken was proper, we are not called upon to entertain respondent's motion for leave to amend his pleadings to permit the contention, under Internal Revenue Code, section 734, that petitioner's presently inconsistent position is being sustained. Respondent's motion will accordingly be denied. No issue was raised with respect to the liability of the individual petitioners as transferees. Decisions will be entered under Rule 50. Footnotes
*. $2,222.22 not paid - Credited to surplus 8/31/40. ↩
**. 9.11% after disallowance of unpaid salaries of $2,222.22.↩
1. No formal pleading was necessary to raise the issue, since on petitioner's own theory the deficiency notice was inconsistent on its face. And there was no surprise. From the opening statements it is apparent that both parties faced the issue. See Walter Cutcliffe v. Commissioner (C.C.A., 5th Cir.), 161 Fed. (2d) 891↩ (Oct. 24, 1947).
2. "(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued - "(1) If such expenses or interest are not paid within the taxable year or within two and onehalf months after the close thereof; and "(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and "(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are person between whoms losses would be disallowed under section 24(b)↩."