[Civ. No. 7186. Second Appellate District, Division Two.—June 17, 1930.]

In the Matter of the Estate of CHARLES LLOYD, Deceased. CHARLES R. RUTHERFORD et al., Appellants, v. JAMES A. LLOYD et al., Respondents.

Fry & Jenkins and Ronald Walker for Appellants.

Farrand & Slosson, Lee D. Matthews, John V. Morris, Jackson Hays, Gibson, Dunn & Crutcher, and Barker & Keithly for Respondents.

THOMPSON (IRA F.), J.—This is an appeal from a portion of a decree of partial distribution. The construction put by the probate court upon the fourteenth paragraph of the last will and testament of the decedent is the subject of appellants' attack. The latter part of the paragraph reads as follows: "If there shall remain for distribution after my wife shall have received her share of my estate,

as above provided, or provision shall have been made therefor, a sum in excess of the aggregate amount of all other legacies, then and in such event, after the payment of all debts, expenses of administration and federal estate taxes and the discharge of all other bequests, the residue shall be divided and distributed among the legatees named under subdivisions fourth, fifth, seventh, tenth and twelfth.''

The question concerns whether the distribution should have been made to the legatees named in these paragraphs equally or in proportion to the amounts of legacies given to them in the subdivisions mentioned. The trial court determined that the latter method was the one intended by the testator. The legacies of paragraphs four, five, seven, ten and twelve vary in amounts from $500 to $25,000. By the fourth the testator gave $10,000 to one of his sisters and $25,000 to each of two brothers. In the fifth he left $25,000 to a nephew, the son of a deceased brother. Under the provisions of paragraph seven, decedent bequeathed to thirteen cousins sums ranging from $1,000 to $5,000 each, and to two daughters of one and four children of another the amount of $500 each. The legatees named in the paragraph just mentioned, or their representatives are the appellants here, while the respondents are the sister, two brothers and nephew of a deceased brother and his assignees. By paragraphs ten and twelve the testator gave $5,000 to each of three strangers to the blood, one of whom was an employee. Altogether by virtue of these five paragraphs $137,500 was to be distributed, $85,000 to four persons (one sister, two brothers and a son of a deceased brother), and $52,500 to twenty-two people (thirteen cousins, six children of cousins, and three strangers).

Section 1317 of the Civil Code says in part that ''A will is to be construed according to the intention of the testator,'' which intention is arrived at by construing all of the parts of a will in relation to each so as to form, if possible, a consistent whole. (Civ. Code, sec. 1321.) That this is the primary purpose of all interpretation of wills, there can be no possible doubt. (*Estate of Peabody*, 154 Cal. 173 [97 Pac. 184] ; *Estate of Henderson*, 161 Cal. 353 [119 Pac. 496] ; *Estate of Spencer*, 203 Cal. 424 [264 Pac. 765].) The trial court evidently applied this rule to the present will, with the result already noticed. There is nothing in the

particular language under consideration which compels us to the conclusion that the testator desired all of the residuary legatees to share equally or otherwise in the residue, but when we look to the remainder of the will his intention is unmistakable. Had he desired that they should share alike in his bounty why did he fix the specific bequests in such varying sums? It is obvious that he doubted whether there would be a residue after payment of the bequests already provided, because he says: "If there shall remain for distribution . . . a sum in excess of the aggregate amount of all other legacies, then and in such event . . . the residue shall be divided," etc. Why, if he was in doubt concerning any balance remaining and he was desirous of placing these relatives and strangers on the same basis, did he not consider the amount of the specific legacies a residue and divide it share and share alike? He fixed in his own mind the relative nearness to him of the objects of his bounty by designating a specific amount which each should have, and unless we are to do violence to his intention, we must follow the measurement laid down by him for the disposal of that which he doubted would remain. As a further indication of the intention of the testator to make bequests to the legatees in proportion with the amounts designated we also direct attention to the first portion of paragraph fourteen, reading as follows: "If the one-half of my estate remaining after the payment of debts, expenses of administration and federal estate taxes should be insufficient for the payment in full of all of the legacies for which provision is hereinbefore made, then and in such event the amount necessary to make up the full sum of four hundred thousand dollars for my said wife shall be first taken in full from the part of the estate over which I have testamentary disposition, *and the amount of each other legacy hereunder* shall be proportionately reduced." Here is unmistakable evidence of the mind of the testator. It is to be noted that the testator's wishes and the proportional method of distribution coincide with what we may assume were his natural affections, the sister and brothers being given a much larger share than his cousins. This construction we think is in accord with a similar one in *Estate of Morrison,* 138 Cal. 401 [71 Pac. 453]. In that case the testatrix had given to a sister, two daughters of the sister, and a brother, each

$5,000. The residue, according to the will, was "to be divided between my sister, Mrs. Wann and her daughters and my brother . . . " The argument made was that the sister and daughters should take one-half and the brother one-half. But the court rejected this contention in this language: "Not only were these bequests of specific amounts to persons named, but the amount given to Mrs. Wann, and to each of her daughters, and her brother, was the same; and having thus given these four persons, as distinct individuals, the same amounts, we may fairly infer that in disposing of the residue she did not intend to disturb that equality, but did intend that they should share equally." Paraphrasing these words by way of applying them to the instant cause we can say: "Having thus given these 26 persons, as distinct individuals specific amounts, we may fairly infer that in disposing of the residue the testator did not intend to disturb the proportion thus fixed, but did intend that they should share in the residue in the same proportion that they shared the specific bequests." Our attention has been directed to the cases of *Haskell* v. *Sargent*, 113 Mass. 341, and *Angus* v. *Noble*, 73 Conn. 56 [46 Atl. 278], both of which support the view we entertain. In the first of these the testatrix had devised a parcel of property to a niece and another piece of realty was given to two children of a nephew. Another clause in the will read that she gave "to the legatees heretofore named in the first and second articles of this will, all of the lands I own north of the rear house, and north of the lane, to be equally divided between said legatees." The question was, did the children of the nephew take one-third or one-fourth of this last devise. In disposing of the contention that they shared equally with the niece the court said: "The reference to the first and second articles of the will, we think, must be taken to signify some other purpose than merely to point out the individuals to be benefited. It indicates that this gift is something additional to the former one; and that *the testatrix had in mind the relations and order of disposition which had before been set forth.*" (Italics ours.) In the second case the testatrix provided certain specific legacies in the form of annuities differing in proportion from the rule provided by the statute of distribution, and then said that if there were any surplus

it was "to be divided among the heirs." The opinion uses these words: "She had given her brothers much less than was to go to a niece, and to two of her nephews much more than to two others. In this way one of the four collateral stocks of descent, between which her estate, had she left no will would have been equally divided, is annually to receive more than the other three put together. *This general intention* must control the effect of the provision in clause 8 for a division among the heirs. Taking, not as heirs, but as purchasers, and having been treated as purchasers unequally in the previous clauses of the will by which the bulk of her property was distributed among them, it must have been her intention that the annual surplus, if any there was, should be divided in similar proportions; and we think taking the whole will together, that this intention is sufficiently expressed." (Italics ours.) We are not impressed with the argument of appellants that the trial court must have constructed and written into the will a formula or mathematical proportion in order to adopt the construction it did. Rather the testator fixed the proportion and the court applied it in accordance with his apparent intention.

■ The appellants also assert that the court could not adopt the construction resulting in the partial decree of distribution because having previously made an order determining the inheritance tax on the basis of a one twenty-sixth or equal distribution of the *residuum* to the residuary legatees the manner of distribution was *res judicata*. A reference to the "Inheritance Tax Act" (Deering's Gen. Laws 1923, Act 8443, p. 3501) demonstrates that it is purely a taxation statute, and while the inheritance tax appraiser for the purpose of making his report as therein provided for must of necessity determine the several interests in the estate of the decedent for the purpose of computing the tax upon "any property passing" therein, it can hardly be said that the proceeding should be conclusive upon any question other than that of taxation. Certainly the legislature never had such a thought in mind, and it is to be doubted if any of our courts ever entertained such an opinion. While the question has not, to our knowledge, been raised heretofore in California, it has been discussed by the New York courts where there exists a statute very similar to our own. In *In re Burger's Estate*, 123 Misc. Rep. 308

[205 N. Y. Supp. 220], the tax appraiser reported that certain legatees could not take under the will, as a matter of law, and hence the legacies became a part of the residuary estate. This report was confirmed by the order of the court fixing the tax, and the executors contended that the order stood as the settled law of the case "irrespective of who was a party thereto." The court replied: "It is obviously necessary to determine this question first, and it is my opinion that the claim is untenable, and that the order in a transfer tax proceeding is binding on questions of taxation only, and is not conclusive upon the right of a legatee or devisee named to have the question of the validity of a bequest or devise determined upon a proceeding to judicially settle the estate. (*Matter of Ullmann,* 137 N. Y. 403 [33 N. E. 480]; *Amherst College* v. *Ritch,* 151 N. Y. 282 [37 L. R. A. 305, 45 N. E. 876].)" In the cited case of *Amherst College* v. *Ritch,* where a similar contention was under consideration, the court said: "The decree of the surrogate should be construed solely with reference to that object, and, as thus construed, the adjudication was that, for the purposes of taxation under the act in question, a certain amount of property passed to the residuary legatees under the will. Legitimate inquiry necessarily stopped at that point; for it was immaterial, so far as that statute was concerned, whether the fund became impressed with a trust after it reached the residuary legatees, as the tax would be the same whether it did or not. They took the legal title, as we have held; and hence their legacy was subject to taxation, without reference to what it became their duty to do with it. The adjudication was necessarily limited to the subject of taxation, and, if conclusive at all as a bar, it was not conclusive upon the rights of the parties arising from matters outside of the will. The surrogate was acting simply as an assessing and taxing officer, and represented the state for those purposes. (*In re Wolfe,* 137 N. Y. 205, 211 [33 N. E. 156].)" This further reason should be noted for our conclusion that the order fixing tax should not be held to be controlling. The proceeding which culminated in the order was not one in which the parties here were adversaries. ■ It is a well-recognized principle of law that the bar of former adjudication can only be raised between those who were parties in the former suit. (*Rob-*

*son* v. *Superior Court,* 171 Cal. 588 [154 Pac. 8], and *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243].)

Decree of partial distribution affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 16, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1930.