SECURITY FIRST NATIONAL BANK OF LOS ANGELES, AS EXECUTOR OF THE ESTATE OF MARY S. MASON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84133. Promulgated August 30, 1938.

*Joseph D. Brady, Esq., W. W. Phelps, Esq.,* and *Frederick E. Hines, Esq.,* for the petitioner.

*L. H. Rushbrook, Esq.,* for the respondent.

428

OPINION.

Mellott: The first question to be determined is whether the decedent had more than a life interest in the estate of her mother.

Petitioner contends that the "Amended Order Fixing Inheritance Tax," dated May 7, 1928, in the mother's estate is a decree of a state court of competent jurisdiction, determining property rights, and, as such, is final and conclusive when the existence and nature of those property rights are in issue before any other tribunal. It is well settled that statutes and decisions of state courts as to property rights or interests are controlling and conclusive upon Federal courts and the Board. *Uterhart* v. *United States*, 240 U. S. 598; *Burnet* v. *Harmel*, 287 U. S. 103; *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5; *Letts* v. *Commissioner*, 84 Fed. (2d) 760. The respondent concedes that this is a general rule;

but he contends that the order involved is not a final and conclusive decree as to the nature and extent of the property rights or interests of petitioner's decedent in the estate of her mother and hence that the rule is not applicable.

In *In re Lloyd's Estate,* 106 Cal. App. 507; 289 Pac. 892, involving the construction of that part of a will which disposed of any residue remaining after the payment of all debts, expenses of administration, and legacies, the question was raised whether the distribution under it should have been made to the named legatees equally, or in proportion to the amounts of the specific legacies given to each of them under the will. The trial court determined the latter method was the one intended by the testator. On appeal the appellants contended that the court could not adopt such a construction because it had previously made an order determining the inheritance tax on the basis of an equal distribution of the residuum to the residuary legatees. The court, in its opinion, said:

A reference to the "Inheritance Tax Act" (Deering's Gen. Laws 1923, p. 3501, Act 8443) demonstrates that it is purely a taxation statute, and, while the inheritance tax appraiser, for the purpose of making his report as therein provided for, must of necessity determine the several interests in the estate of the decedent for the purpose of computing the tax upon "any property passing" therein, it can hardly be said that the proceeding should be conclusive upon any question other than that of taxation. Certainly the Legislature never had such a thought in mind, and it is to be doubted if any of our courts ever entertained such an opinion. While the question has not, to our knowledge, been raised heretofore in California, it has been discussed by the New York courts, where there exists a statute very similar to our own. [Citing and discussing New York decisions.]

In *In re Rath's Estate,* 75 Pac. (2d) 509, 512, the California Supreme Court stated:

* * * The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will. *In re Lloyd's Estate,* 106 Cal. App. 507, 289 Pac. 892.

See also sections 1020 and 1021, Deering's Probate Code of California, 1933.

We are of the opinion that the order fixing the inheritance tax, based upon the appraiser's determination and report that the petitioner's decedent had a "life interest" in the estate of her mother, is not final and conclusive upon any question other than the amount of tax due to the state, and is not binding, except for such purpose, upon the heirs or legatees.

Section 1020 of the Probate Code of California provides in part that immediately upon the final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the ap-

plication of the executor or administrator, or of any heir, devisee, or legatee, or his assignee, grantee, or successor in interest, the court must proceed to distribute the residue of the estate among the persons entitled thereto. Section 1021 of the Probate Code of California provides, in so far as applicable herein, that in its decree of distribution the court must name the persons and the proportions or parts to which each is entitled and that such order or decree, when it becomes final, is conclusive as to the rights of the heirs, devisees, and legatees. *Luscombe* v. *Fintzelberg*, 162 Cal. 433; 123 Pac. 247. No such final accounting or decree of distribution has been made in the mother's estate.

Since the order fixing the inheritance tax is not a final and conclusive determination of the interest of decedent in the estate of her mother, and since no decree of distribution has been made, it is necessary to look to the mother's will to ascertain the extent of the interest of petitioner's decedent in the estate.

On brief the respondent states that he does not contend that the so-called charitable trust set up in the mother's will is invalid because of indefiniteness, but he now contends, first, that the will itself is so ambiguous, vague, indefinite, uncertain, and contradictory that it is void and that decedent therefore shares in her mother's estate as though her mother had died intestate; and, second, that if the will is not so ambiguous and indefinite as to be void, the only charitable devise made in it is the devise of the 76 acres (lot A of Ranchito del Fuerte) for the establishment of a horticultural college and technical school for girls of California.

Sections 380 and 384 of the Probate Code of California, 1933 (formerly sections 1327 and 1333 Code Civil Procedure), provide that if no person contests the validity of a will, or the probate thereof, within six months after it is probated, "the probate of the will is conclusive" except as to infants and persons of unsound mind who were not made parties to the proceeding.

The will of the mother consists of four separate writings. Section 101 of the Probate Code of California, 1933 (formerly sections 1317 and 1320 of the Civil Code of California), provides as follows:

Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument. A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.

Section 103 of the Probate Code of California, 1933 (formerly sections 1321 and 1323 of the Civil Code), provides as follows:

Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.

Section 102 of the Probate Code of California, 1933 (formerly section 1326 of the Civil Code), provides in part that "of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." Furthermore, courts are reluctant to hold wills void for uncertainty and will not do so if a construction effectuating the testator's intent is possible. 68 C. J. 937.

Examining the several writings in the light of these statutory rules of construction, we find that none contains any express or specific devise of real estate or other property to the daughters. In providing for the daughters and granddaughter, the testatrix refers to the "income" of the estate. In the writing of September 19, 1925, in discussing her plans regarding the disposition of her estate, she states, in substance, that she had devoted time and energy to using and employing her land and other resources so as to provide for her daughters "beyond peradventure." She expresses the desire that the property be used to that end, and directs that the details "be worked out by others so that the income and properties shall be secured" to her daughters. The will provides that all the ranch property, lot A, the 76-acre tract, and lot B, a 132-acre tract, both in the Ranchito del Fuerte tract, be held in trust, and also a 115-acre tract in Rancho Paso de Bartolo. It further provides for the sale of the above realty, except the 76-acre tract, which is to be held in perpetuity, and directs that the "houses — home — and about eleven acres of ground" be used as a home for her daughters and granddaughter "during their respective lives", and that the funds received from the sale of the property be invested in "income business property of first grade." In the writing of September 19, 1925, it is restated that the 76-acre tract, lot A, of Ranchito del Fuerte, shall be held as a home so long as her daughters require it, after which it is to be held for the benefit of the girls of California for a horticultural college and technical school. In the last writing of July 26, 1926, she sums up her plans as follows: "My efforts have been and are for my dear children when they are through with the income they will arrange for the college and technical school."

While there is some ambiguity in the several writings, a careful reading of all of them discloses that the testatrix had two purposes in mind: (1) To provide for her daughters (in particular her two unmarried daughters) and granddaughter during their respective lives, and (2) upon the death of the survivor, the establishment and maintenance of a horticultural college and technical school for girls. If she had set aside the 76-acre tract only for the use of the school, as contended by the respondent, it is apparent that her second purpose would fail. Since the testatrix provided specifically that the 76-acre tract should be held in perpetuity, it is obvious that without provision for other and additional property or funds no college could

have been established or maintained. However, if the provisions of the will are construed so as to give the daughters and granddaughter a life interest in the income only, the residue to be held and used for the establishment and maintenance of the college, both purposes of the testatrix are made possible. It is our opinion that the testatrix intended to give to her daughter, petitioner's decedent, only a share in the income of the estate above that required for the comfort and happiness of the unmarried daughters. Since the interest of decedent in her mother's estate ceased at her death, the respondent erred in including the amount of $30,125.42 in her gross estate as the value of her interest, at the date of her death, in her mother's estate.

As to the second issue the evidence shows, and we have found, that item 1 of the real estate schedule had a value of $25,000 at the date of the death of the petitioner's decedent.

At the close of the hearing counsel for the respondent moved, upon the proof, for an increased deficiency, in the event that the Board should hold the order of the Superior Court of California to be controlling as to the property interest of the decedent. His theory seems to be that, since the inheritance tax appraisers determined the value of the real estate belonging to the estate to be $157,000, which value was approved by the court, this amount should be used in determining the value of the gross estate for the purpose of the Federal estate tax rather than the value determined by him of $124,338. He accordingly seeks to include in decedent's gross estate an additional $32,662.

We have not held the order of the court to be controlling, though we have held that the respondent erred in including in the estate the $30,125.42 discussed in the earlier portion of this opinion. No amended answer was filed asking for an increased deficiency, and the claim for such is not referred to, nor discussed, upon brief. Apparently it has been abandoned; but if not, it must be denied.

No evidence was adduced, nor was any issue raised, as to the value of the real estate. The executor included it in the return at a value of $124,338. The respondent apparently accepted this value as correct when he determined the deficiency on February 10, 1936, notwithstanding the fact that the second amended report of the inheritance tax appraisers finding the value to be $157,000 had been filed in the court months previously, i. e., on August 1, 1935. A presumption of correctness attached to respondent's determination of value and he can not lightly set it aside or ignore it. The burden rested upon him to prove that he erred in his original determination. *Schilling Grain Co.*, 8 B. T. A. 1048; *Estate of Irving Lee Stone*, 26 B. T. A. 1; affd., 61 Fed. (2d) 1022; *Alexander D. Falck*, 26 B. T. A. 1359; affd., *Houghton v. Commissioner*, 71 Fed. (2d) 656; certiorari denied, 293

U. S. 608; *Rainbow Gasoline Corporation*, 31 B. T. A. 1050.  He has failed to make such proof.

> *Decision will be entered under Rule 50.*