Ace Heater Manufacturing Co., Inc. v. Commissioner.
Ace Heater Mfg. Co. v. Commissioner
Docket No. 26042.
United States Tax Court
1951 Tax Ct. Memo LEXIS 32; 10 T.C.M. (CCH) 1116; T.C.M. (RIA) 51364; November 29, 1951
Thos. C. Webb, C.P.A., for the petitioner. Allen T. Akin, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1946 and 1947 in the amounts of $10,995.42 and $12,925.17, respectively, as shown by the notice of deficiency, which amounts, in respondent's amended pleading, have been increased to $15,755.42 and $19,109.82, respectively. The question for our determination is: Did the respondent err in disallowing all or a part of the deductions claimed by petitioner for salary and compensation paid Z. A. Booth, Sr., its president, and Z. A. Booth, Jr., its vice president, on the alleged grounds: (a) That the sums so paid were in excess of reasonable compensation *33 for the services rendered by them and were not paid as compensation, and (b) that such payments were within the purview of section 24(c), Internal Revenue Code, and were not paid within the taxable year or within two and a half months after the close thereof. Petitioner does not contest other adjustments by respondent in the notice of deficiency. Findings of Fact Petitioner is a corporation engaged in the manufacture of water heaters, with its principal place of business in Dallas, Texas, and filed its income tax returns for the years 1946 and 1947 with the collector of internal revenue for the second district of Texas. Z. A. Booth, Sr., and H. H. McDaniel organized petitioner in 1929 and each owned 50 per cent of its stock until 1945, McDaniel acting as manager of the business during this period. In the spring of 1945 McDaniel retired from the business, selling his stock to Booth, Sr. Booth, Sr., from then on, including the taxable years, was the owner of all of petitioner's stock, except in February, 1946, one qualifying share was issued to Booth, Jr. Effective July 1, 1945, Booth, Sr., as president of and for petitioner, employed Hubert Knight, a *34 former employee of petitioner, as manager of the business, agreeing to pay him for his services one-half of the net profits of the business, with a drawing account of $250 a month. This contract was in writing and was for a period of 15 years. Knight was not related to the Booths. In the fall of 1945 Booth, Jr., then aged 34 years, son of Booth, Sr., having served three years in the Navy, returned home with the rank of lieutenant. He was familiar with petitioner's business, having, prior to his naval service, devoted several years thereto, and after negotiations he was employed to work for petitioner, beginning January 1, 1946. Booth, Jr.'s employment was satisfactory to Knight, and he agreed to a cancellation of his contract for 50 per cent of the profits. A new contract was entered into, whereby Knight and Booth, Jr., would each receive for their services one-third of the profits of petitioner, and the remaining one-third was to be paid to Booth, Sr. Knight and Booth, Jr., were each to have a drawing account of $250 a month. The contract was to run for 10 years. It was reduced to writing, but not executed, and the parties operated under its terms as an oral agreement throughout *35 the year 1946 and until February, 1947, when Knight left petitioner after a disagreement with Booth, Sr., which had its beginning in Knight's not receiving a written contract to take the place of the old contract. When Knight quit he had a balance due him of about $18,000 of the 1946 and 1947 profits, which was paid him by petitioner after he brought suit against petitioner in settlement of their differences. No one took Knight's place and thereafter his one-third of the profits reverted to the company. From January 1, 1946, to February 1, 1947, Knight was manager of the business and during that period, Booth, Jr.'s duties which he performed were to help Knight in all phases of the business, help keep the books, hire and fire employees, purchase material and work on the mailing list. Booth, Jr., devoted his entire time to the business; his regular hours of work were from eight A.M. to five P.M. daily, and on occasions he worked after hours. After Knight quit, on February 1, 1947, his duties largely devolved upon Booth, Jr., who continued to work as theretofore, plus much of the work theretofore performed by Knight. In 1946 and 1947 Booth, Jr., rendered valuable and indispensable *36 services to petitioner in the conduct of its business. Petitioner's gross earnings, officers' salaries and taxable net income and dividends paid, as shown by the income tax returns for the years 1935 to 1948, inclusive, are as follows: Year
Gross
Officers'
Taxable
Dividends
Earnings
Salaries
Net Income
Paid
1935
$19,257.38
$ 7,200.00
$12,057.38
$ 6,800.00
1936
35,088.79
15,000.00
20,088.79
28,518.39
1937
42,555.87
15,000.00
27,555.87
22,371.38
1938
25,453.53
11,250.00
14,203.53
11,833.16
1939
51,752.98
15,000.00
36,752.98
33,049.49
1940
51,724.39
24,000.00
27,724.39
21,567.56
1941
50,411.15
24,000.00
26,411.15
21,215.23
1942
18,183.35
12,000.00
6,183.35
327.10
1943
4,329.73
4,000.00
329.75
.00
1944
8,860.80
7,200.00
1,660.80
1,578.37
1945
9,033.80
7,200.00
1,833.80
1,418.60 *
1946
50,180.04
42,180.04
8,000.00
.00
1947
64,232.77
44,830.92
19,401.85
.00
1948
26,009.48
9,215.69
16,793.79
.00
Petitioner's net sales, shown by its income tax returns, were: Year
Net Sales
1935
$ 21,784.81
1936
31,919.20
1937
154,018.81
1938
185,146.79
1939
217,368.86
1940
183,273.00
1941
190,288.64
1942
102,923.15
1943
33,473.60
1944
24,294.27
1945
None shown
1946
252,216.70
1947
290,133.11
*37 During the war years material for making heaters was difficult to obtain, and consequently petitioner's business was almost suspended and had to be rebuilt thereafter. Concerning the compensation to officers of petitioner, the amounts claimed as deductible by petitioner and amounts allowed by respondent were as follows: Amounts
Amounts Allowed
Allowed by
Amounts
by Respondent in
Respondent in His
Year, 1946
Claimed
Deficiency Notice
Amended Pleading
Z. A. Booth, Sr., Pres.
$17,090.02
$6,000.00
0
Z. A. Booth, Jr., V. Pres.
25,090.02
6,000.00
$3,000.00
Year, 1947
Z. A. Booth, Sr.
23,000.00
9,000.00
0
Z. A. Booth, Jr.
21,830.92
9,000.00
3,000.00
At the end of 1946 the profits of petitioner were credited to the individual ledger accounts of Knight, Booth, Sr., and Booth, Jr. During that year Knight and Booth, Jr., each had drawn $250 a month, or $3,000 a year which was charged to salary account but was considered a part of the one-third of the net profits. During the year 1947 Booth, Jr., continued to draw $250 a month which was charged to the salary account, and at the end of that year one-third of the profits was credited *38 to his account in the same manner as in 1946. On June 2, 1947, the directors of petitioner agreed to pay Z. A. Booth, Sr., a salary of $1,500 a month for the year beginning January 1, 1947, and on September 2, 1947, agreed to pay Z. A. Booth, Sr., a $5,000 bonus for the year 1947. On December 31, 1947, at a meeting of the board of directors, it was agreed to pay Z. A. Booth, Jr., one-third of the net profits of petitioner as salary for the year 1947. Reasonable compensation of Z. A. Booth, Sr., for his services to petitioner was $6,000 for 1946 and $9,000 for 1947, being the amounts determined as reasonable by respondent in his notice of deficiency. Reasonable compensation of Z. A. Booth, Jr., for his services to petitioner in the year 1946 was $25,090.02, and for 1947 the sum of $21,830.92, which amounts petitioner claimed as deductions in its income tax returns for those years. In petitioner's income tax returns for each of said years there appears this question and answer: "12. Is this return made on the basis of cash receipts and disbursements? "Yes. * * *" Petitioner, Z. A. Booth, Sr., and Z. A. Booth, Jr., were each and all on the cash basis and method of accounting *39 in 1946 and 1947. In each of said years Z. A. Booth, Sr., and Z. A. Booth, Jr., each filed an individual income tax return and reported therein as part of their gross income the sums paid them by petitioner, being the same amounts here in question. Opinion The question of what amount is reasonable for income tax purposes under section 23(a)(1)(A), I.R.C., for a corporation to pay its officers and employees is usually difficult to determine. There is no fixed yardstick and each case must stand upon its own peculiar facts shown to exist, and in determining whether compensation is reasonable the situation must be considered as a whole, particularly with reference to the nature and character of the services performed. As to Z. A. Booth, Sr., aside from having contributed the capital and owning all of the stock of petitioner's corporation, no evidence was introduced as to whether or not Booth, Sr., rendered any services to petitioner in the taxable years. Respondent, in his notice of deficiency, determined that a reasonable compensation for Z. A. Booth, Sr.'s services to petitioner was $6,000 for 1946 and $9,000 for 1947, and in the absence of evidence to the *40 contrary, that determination is presumed to be correct. Respondent, in his amended pleadings, reduced these amounts to zero, holding that Z. A. Booth, Sr., was entitled to no compensation for services performed in the taxable years. Under respondent's amended pleading he has the burden of proving that his original determination was in error. Pepsi Cola Co., 5 T.C. 190; Security First National Bank of Los Angeles, 38 B.T.A. 425; Rainbow Gasoline Corp., 31 B.T.A. 1050. This he has not done and accordingly we have found and so hold that reasonable compensation for Z. A. Booth, Sr., was $6,000 in 1946 and $9,000 in 1947. The services performed by Z. A. Booth, Jr., in the taxable years were valuable and indispensable to petitioner in the conduct of its business. His compensation was based wholly upon a contingent basis, and an employee serving upon such basis takes a risk which one serving for a fixed salary does not. His contract of employment was also made at a time when due to war conditions petitioner's business had practically vanished and had to be rebuilt, and at the time the contract was made, it was not foreseen what amount in dollars and *41 cents Booth, Jr., would receive. Furthermore, that the employment contract was an arm's length transaction is shown by the fact that Knight, unrelated to the Booths, accepted a similar contract and performed similar services for the same compensation. We think the evidence, when considered as a whole, amply sustains our ultimate finding that the sums paid Booth, Jr., by petitioner for his services in the taxable years were reasonable and therefore deductible, and we so hold. We can not agree with respondent that the compensation paid Booth, Jr., in the taxable years was not an allowable deduction, due to the inhibition contained in section 24(c) of the Code. To warrant disallowance thereunder it must appear that all three of the conditions prescribed in that section co-exist. Fervel Topek, 9 T.C. 763. The requirement of subdivision (2) of section 24(c) relating to a different method of accounting of the employer and employee is not sustained by the evidence. Respondent, in recognition of this requirement in subdivision (2) of the section, and to meet same, in his amended pleading wherein he invoked section 24(c), alleged: "* * * that petitioner filed its income *42 tax returns on the accrual basis and Z. A. Booth, Jr., filed his income tax returns on the cash basis; * * *." There is no evidence in the record to sustain this allegation. On the contrary it appears from the income tax returns filed by petitioner and Booth, Jr., that they were both on the cash basis, and that both used the same method of accounting in the taxable years. Decision will be entered under Rule 50. Footnotes
*. Salary, Z. A. Booth, Sr.↩