[Civ. No. 24375. Second Dist., Div. Two. Oct. 7, 1960.]

Estate of ETHEL MAY KUTTLER, Deceased. BERTHA McQUARRIE et al., Appellants, v. MICHAEL M. KUTTLER, as Guardian, etc., et al., Respondents.

Kenneth C. Beatson and William C. Rau for Appellants.

Wellborn, Barrett & Rodi, Frank C. Hubbard and Gyte Van Zyl for Respondents.

ASHBURN, J.—Appeals by Bertha McQuarrie and Earl Hayter from Decree Determining Interests in Estate and Order Denying Petitions for Preliminary Distribution. Ethel May Kuttler died on February 28, 1956, leaving as her only heirs three grandchildren, Joan Perry Kuttler, William Brent Kuttler, and Nancy Ann Kuttler, the issue of her two deceased sons. The mother of one of them is Vera R. Miller and Michael Kuttler is the mother of the other two. A sister, appellant Bertha McQuarrie, and two brothers, Robert Evans and

Fred Evans, also survived decedent. Earl Hayter testified at a former hearing in this matter that he was Mrs. Kuttler's fiancé at the time of her death.[1]

Mrs. Kuttler left a holographic will reading as follows: "Los Angeles 15, Calif. February 16th—56 To whom it may concern: If at any time I should pass on before I have a recorded Will: this is to certify that I do not want Mike Kuttler or Vera Kuttler, my deceased Sons' wives to have one thing or one cent of what I have: nor the children Joan, Bill or Nancy Ann as I never see them so I enjoy no pleasure from them. Notify Earl Hayter or my sister Bertha McQuarrie Do. 7-7821—for them to dispose of my belongings as they see fit. Signed Mrs. Ethel May Kuttler 2/16/56."

Her estate consisted of cash, stocks, bonds, trust deed notes, furniture and household and personal effects; the entire estate was valued at $143,000, which sum included $68,069.17 in banks and similar depositaries; $2,424.36 in United States Savings bonds (40 items) ; $7,130.36 in trust deeds; her home valued at $42,500; another parcel of realty appraised at $11,000. The contents of her home, described as "Household furniture, furnishings & equipment at decedent's apartment, Apt. B, 826 W. 18th St., Los Angeles, Calif." were valued at $200 and no mention whatever is made in the inventory of the contents of the garage to which counsel attach much seeming importance. Other items of tangible personal property consist of a ring, $350; a wrist watch, $5.00, costume jewelry, $10; a 1941 Chevrolet automobile appraised at $35. She also had a savings account of $6,735.11 in a savings and loan association standing as follows: "Mrs. Ethel May Kuttler, as Trustee, and payable on death to the following named beneficiary—Mrs. Bertha E. McQuarrie, sister."

The sister, Bertha McQuarrie, and said Earl Hayter, petitioned for probate of the holographic instrument; their application was opposed by Michael M. Kuttler as guardian for the three minor grandchildren. The objections were sustained and probate of the document was denied. The trial judge ruled that the instrument is not testamentary in character, was not intended to be testamentary, was not intended to dispose of decedent's property and did not do so. From the order denying probate Hayter and McQuarrie appealed.

---

[1]We so designated him in our opinion in *Estate of Kuttler*, 160 Cal. App.2d 332, 334 [325 P.2d 624]. But the trial judge, at the hearing which resulted in the present appeal, excluded all evidence as to the relationship between Hayter and Mrs. Kuttler.

Hayter applied for letters testamentary; that petition was denied and he appealed from the ruling. Appellant Bertha McQuarrie applied for letters of administration with the will annexed and appealed from the portion of the said order which denied her application. Michael M. Kuttler, as general guardian for minor grandchildren Joan Perry Kuttler and William Brent Kuttler, and as guardian ad litem for the other grandchild, Nancy Ann Kuttler, petitioned for letters of administration; this petition was granted and Hayter and McQuarrie appealed from that ruling.

All appeals were heard together in this court which, in *Estate of Kuttler*, 160 Cal.App.2d 332 [325 P.2d 624], affirmed the denial of Hayter's petition for letters testamentary and reversed the trial court's order in all other respects with instructions to admit to probate the holographic document of February 16, 1956, to vacate the order appointing Kuttler as administrator, and to make an order granting to appellant McQuarrie letters of administration with the will annexed. The Supreme Court having denied a hearing, the lower court complied with these instructions and McQuarrie and Hayter thereafter executed and filed a document entitled Exercise of General Power of Appointment and Authorization for Distribution in Accordance Therewith. By said instrument, appellants exercised the general power of appointment conferred upon them by decedent's will in favor of themselves, and conveyed to themselves, as tenants in common, equal undivided interests in the whole of decedent's estate, both real and personal property. Thereafter they filed petitions for preliminary distribution asking the court to distribute to them, as tenants in common, undivided one-half interests in $20,000 cash and a parcel of real property appraised in the inventory at $11,000.

The respondent grandchildren, represented by their guardian, Michael M. Kuttler, filed written objections to both petitions. They also filed a petition for a decree determining interests in the estate, alleging that decedent by her will conferred upon McQuarrie and Hayter a power of appointment over her "belongings," but that said term "belongings" as used by decedent in her will, was intended to and does refer only to her tangible personal property; that decedent died intestate as to her real property and intangible personal property, including stocks, bonds, notes and cash, and that said purported exercise of the power of appointment was invalid

insofar as it purported to affect any part of decedent's estate except her tangible personal property.

Appellants then filed their respective statements of claim of interest in decedent's estate. Both appellants alleged that the power of appointment conferred upon them by will embraces decedent's entire estate; that having exercised the power in their own favor, they are entitled to have decedent's entire estate distributed to them. All matters were heard together.

The trial court found in substance that it appeared from decedent's will when read in the light of the surrounding circumstances, that decedent intended to and did refer only to her tangible personal property when she used the phrase "my belongings" in her will. The court concluded that decedent died intestate as to her real property and intangible personal property, and that respondents, as her sole heirs at law, succeed thereto. A Decree Determining Interests in Estate, etc., was entered accordingly. McQuarrie and Hayter have appealed from the whole of that judgment and said appeal is now before us for disposition.

In our former decision we held that the will conferred a power of appointment upon McQuarrie and Hayter with respect to decedent's entire "belongings"; that such a power is valid in this state; that the donee of a general power of appointment may exercise it in his own favor; that such a power in legal effect gives the donee an absolute ownership of the property. At page 342 it was said: "What Mrs. Kuttler obviously desired was that her donees have the power to distribute her 'belongings' if she should die before executing a new and formal will. To say that she wanted something less is to deny the obvious. Of course, the fact that she expected to make a later and more formal will would not detract from the testamentary character of the one in question. . . . Upon the issue of whether the writing should be probated, it is unnecessary to consider whether the term 'belongings' as used therein would include decedent's real estate, because a document may be a will although it disposes of only part of the testator's property. Intestacy as to a portion of the decedent's estate is a familiar situation. However, this question must be determined in connection with the appeals involving the right to letters." At page 343: "The conflicting petitions of McQuarrie and of Michael M. Kuttler, as guardian, for letters of administration require solution of the question whether the phrase 'my belongings' embraces decedent's entire estate,

including her real property. This follows from the fact that Probate Code, sections 409 and 422, give the grandchildren priority of right over a sister and over Hayter ('Any person legally competent'), provided that the grandchildren 'are entitled to succeed to the estate or some portion thereof' (20 Cal.Jur.2d, § 122, p. 175.) If the will does not dispose of the realty[2] the grandchildren do succeed as heirs to that portion of the estate, and their guardian is entitled to letters c.t.a. in preference to Mrs. McQuarrie (20 Cal.Jur.2d, § 122, p. 176), for he stands in the same position with respect to letters as do his wards. (20 Cal.Jur.2d, § 102, p. 150, § 140, p. 204.) But if the phrase 'my belongings' includes realty,[3] the grandchildren take nothing and appellant McQuarrie has the better right to letters of administration. In order to solve this problem a present construction of that phase of the will is inescapable.

"The phrase 'my belongings' may take on varied hues of meaning according to its matrix. Here there is nothing to indicate an intention to limit it to a portion of decedent's assets." Page 336: "Mrs. Kuttler had talked to her attorney several times about preparing a will for her. She told him: 'I don't want my grandchildren or my daughters-in-law to get their hands on anything I have got.' He advised that she could not disinherit her grandchildren unless she gave the property to someone else; '[y]ou have to decide who you are going to give it to or they will take it against the will on any other part you are going to dispose of.' The reply was: 'I haven't decided, but I am thinking it over.' The matter was left in this posture at the conclusion of a conversation of February 8, 1956. By February 16, 1956, she had devised a means of making a will which would serve her purpose until she arrived at a definite decision as to how she wanted to distribute her estate. She decided to give her sister, Bertha McQuarrie, and her fiancé, Earl Hayter, a general power of appointment. Perhaps she did not think in such terms, but that is the legal effect of what she did." Page 344: "She doubtless recognized, after the explanation made by her lawyer that she could not disinherit her grandchildren without giving the property to someone else, that they would take any part of her property that the will did not dispose of. Her obvious intent in making this stopgap will was to prevent inheritance by the grandchildren or their mothers. The docu-

[2]We should have said "realty and intangible personal property."
[3]See footnote [2], supra.

ment must be so read as to effectuate that intent, if possible.''
Pages 345-346: ''If the phrase 'my belongings' were con-
strued as excluding realty, Mrs. Kuttler would have died
intestate as to more than one-third of her holdings, according
to probate valuation. There is a presumption against intestacy,
total or partial, which is very strong.[4] 'There is a
presumption that a testator intends to dispose of all of his
property in the absence of controlling language in the will to
the contrary. [Citations.] ██ In construing the will it was
proper for the trial court to take this presumption against
partial intestacy into consideration. [Citations.]' (*Estate of
Schuster, supra,* 137 Cal.App.2d 125, 130.) 'With
respect to such a situation, many decisions of this state provide
authority for the rule that where by the terms of a will it is
not made clear nor certain that intestacy—whether partial or
total—was intended, an interpretation which will avoid intes-
tacy will be adopted. [Citations.] Also, it has been
judicially declared that ''The very fact of making a will
raises a presumption that the testatrix intended to dispose of
all of her property.'' [Citations.] And in the case
last cited, the court reiterated the rule that ''Whenever a
disputed word or phrase may be reasonably given either of
two meanings, that meaning should be given which will pre-
vent intestacy . . . [citations].'' Constructions which
lead either to total or partial intestacy are not favored. [Cita-
tion.]' (*Estate of Northcutt,* 16 Cal.2d 683, 689-690 [107
P.2d 607].) Of course, this presumption amounts to evidence
of the absence of any intention to die intestate as to the realty.
There is nothing in the instant record to contradict it and it
therefore must prevail.''

 Respondents argue that the former ruling of this

---

[4]*Estate of Akeley,* 35 Cal.2d 26, 29 [215 P.2d 921, 17 A.L.R.2d 647]:
''Presumptions against intestacy are especially applicable in construing
residuary clauses, since generally they are employed for the purpose of
making complete disposition of the testator's property. Constructions
leading to intestacy either in whole or in part are not generally favored
but will be rejected when the language is reasonably effective to dispose
of the entire estate; and liberal interpretation is employed to that end.''
*Estate of Olson,* 144 Cal.App.2d 694, 696 [301 P.2d 501]: ''It is ap-
parent from the instrument that the words of the testatrix specifically
disinherited her son, and it was her desire and intent to avoid intestacy
and leave her entire estate to her daughter by the words 'all My Per-
sonal belongings.' The very fact that the testatrix made a will raises
a presumption that she intended to dispose of all of her property. [Cita-
tions.] Whenever a disputed word or phrase may be reasonably given
either of two meanings, that meaning should be given which will prevent
intestacy, either entire or partial. [Citation.]''

court does not establish the law of the case upon this point; that the findings now under review rest upon a more complete record and hence a different factual showing which renders the rule of law of the case inapplicable; that indeed this issue was not canvassed in the lower court because the battle was over admissibility of the document to probate. We are inclined to the view that this argument is correct (see *Estate of Nicoll,* 79 Cal.App.2d 48, 53 [179 P.2d 95]; *Estate of Plaut,* 27 Cal.2d 424, 427 [164 P.2d 765, 162 A.L.R. 83]; *Estate of Lloyd,* 106 Cal.App. 507, 511 [289 P. 892]; *Estate of Nolan,* 145 Cal. 559, 561 [79 P. 428]), but it merely results in a renewed examination of the facts pertinent to this issue. It does not do away with the evidence above quoted from page 336 of our former opinion concerning advice given to testatrix by her lawyer eight days before the will was made.

It is argued that the testimony of attorney Beatson and appellants McQuarrie and Hayter was properly disbelieved on the ground of interest in the case. Let that be conceded for the purpose of further discussion. Rejection of their testimony does not create evidence to the contrary of what is thus discarded (*Estate of Kuttler, supra,* at page 337; *Estate of Bould,* 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15]; *Oldenburg* v. *Sears, Roebuck & Co.,* 152 Cal.App.2d 733, 742 [314 P.2d 33]; *Cooper* v. *Cooper,* 168 Cal.App.2d 326, 330 [335 P.2d 983].) There still remains the declaration of the will that testatrix does not want the daughters-in-law or the grandchildren to "have one *thing* or one *cent* of what I have" (emphasis added), and in order to effect that result she directs "them [Hayter and McQuarrie] to dispose of my belongings as they see fit." Certainly this, standing alone, means that they in good conscience shall not give any of the belongings to the grandchildren or their mothers. The phrase of the will "I do not want [them] to have one thing or one cent *of what I have*" (emphasis added) undoubtedly reflects the determination expressed to her attorney, Mr. Beatson, in their last conversation as related by him: "[W]e have a front counter in the front office and she stopped at the counter and she said, to the best of my recollection, 'I don't know why I should have so much trouble. I have lost both of my sons, one grandchild doesn't know me and I never see the other two.' She said, 'I lie awake nights wondering what I have ever done to have so much trouble and can't sleep.'" Also: "You have many blessings, if you will count your blessings you will sleep. And she said,

'The only blessings that I have are my belongings.' She said, 'That is all Mike or Vera are interested in, they can't wait till I am dead to get their hands on *what I have got.*' " (Emphasis added.) Neither phrase fairly carries the connotation of $200 out of a total of $143,000 in assets.

It is argued by respondents and the lower court that this power running to Hayter and McQuarrie cannot mean that they may appropriate the "belongings" to themselves, that testatrix would have said so if she intended that result, a gift to them. This overlooks a cardinal principle stated in our former opinion: (P. 335) "It is also well to bear in mind the fact that the search for a testatrix' intention does not involve a determination that she understood the legal effect of the directions found to have been expressed by her in the will. The effect of what she has provided is governed by substantive law. If she makes a bequest which violates the rule against perpetuities (*Estate of Fair*, 132 Cal. 523 [60 P. 442, 64 P. 1000, 84 Am.St.Rep. 70]) or attempts to immunize a trust beneficiary's income from claims of his creditors to an extent not recognized by statute (*Canfield* v. *Security-First Nat. Bank*, 13 Cal.2d 1 [87 P.2d 830]) or to defeat the claim of the Alien Property Custodian to a future interest (*Estate of Zuber*, 146 Cal.App.2d 584 [304 P.2d 247]), that intention, though plainly shown, cannot prevail.

"Volume 57, American Jurisprudence, section 1134, page 729 : '*Contravention of Rule of Law or Policy.*—Although all the arbitrary rules and canons of testamentary construction are subordinate to the intention of the testator, it is universally recognized that the testatorial intention, even where clearly ascertainable, must yield to an established rule of law or public policy if it is in conflict therewith. Common examples of situations in which the testator's intention is overcome upon this theory are afforded by wills whose terms disregard the rule in Shelley's Case or the rule against perpetuities. In such cases the will must fail of effect, not because the intent of the testator does not control in its construction, but because the law will not permit his intent to be accomplished. It is to be remembered in this connection that the question in construing a will is not whether the testator intended to make a valid disposition of his property, but what provision he actually intended to make; when that intention is found, it is for the court to determine whether or not the intended provisions are valid or illegal.' "

Repeatedly counsel for respondents concede in their brief,

as in oral argument, that Mrs. Kuttler's dominant purpose in making the will was to disinherit the grandchildren and their mothers and that their construction of the will, the one adopted by the court, frustrates that testamentary intention. Exemplars: "The first paragraph of the will is explicit and all-inclusive. Decedent did not want her daughters-in-law or her grandchildren, to have one thing or one cent of what she had. There is no question that she intended to disinherit those named persons. . . . Her primary intention was to exclude the daughters-in-law and their children from any share in her estate if she died before she had a recorded will. The second paragraph of the will was intended merely to aid that primary intention . . . . We realize that the above interpretation results in the frustration of decedent's purpose in executing the holographic will. But that is a result which must necessarily follow if the decedent's intent was to confer the power of disposal only as to tangible personal property. . . . Respondents have never disputed the intention of decedent to exclude them from 'one thing or one cent' of what decedent had." Having so conceded, counsel for respondents nevertheless argue for an interpretation of the will which would vest practically all of the $143,000 estate in the persons whom testatrix was determined to cut off with a dollar if complete disinheritance proved to be impossible.[5]

In this connection it should be recalled that a testatrix who is of sound mind and free from fraud or undue influence (as here) has an absolute right to will her property to whomsoever she pleases and is under no obligation to make such disposition as will meet with approval of a judge or jury. "But even if we could consider the will as unjust, it would make no difference. In disposing of her property, she was not called upon to consult the wishes or views of juries or courts; her own will was supreme. 'The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor the soundness of his reasoning. He may do what he will with his own; and if there be no defect of testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust.' " (*In re Spencer*, 96 Cal. 448, 452 [31 P. 453].) To the same effect see: *Estate of Garvey*, 38 Cal.App.2d 449, 454 [101 P.2d 551]; *Estate of Fuller*, 143 Cal.App.2d 820, 823 [300 P.2d 342].

---

[5]See letter of September 29, 1955, quoted *infra*.

After theoretical rejection of the testimony of Beatson, McQuarrie and Hayter, respondents attempt to build up the theory that "my belongings" includes only "tangible personal property" in the apartment and garage and excludes the major portion of the estate which consists of stocks, bonds, cash, investment certificates, trust deed notes and real estate. This tangible personalty consisted of furnishings with which decedent's apartment was "overloaded," characterized by respondent Vera Miller as "more or less junk," plus "stuff" Mrs. Kuttler had saved and stored in a garage, such as newspapers, old shoes, bed springs, unused chairs, lawnmower, rake,—which filled it "to the gills"; appraised value $200. Pertinent here is the following language of our former decision (160 Cal.App.2d at 342) : "Respondents cannot prevail upon the argument that the use of the word 'notify' or the giving of Mrs. McQuarrie's telephone number in the second paragraph of the writing indicates a sense of urgency, or that deceased used the words 'dispose of my belongings' in the sense of authorizing Hayter and McQuarrie to transfer her personal effects, jewelry and removable objects to a place of safekeeping in order to protect them from falling into the hands of the daughters-in-law. Nothing but speculation underlies that argument." The record is barren of any evidence that testatrix had any concern for the preservation of the quantities of "junk" that she had accumulated in her apartment and garage. Not only is respondents' argument opposed to the phrasing of the will—"I do not want [them] to have one thing or one cent of what I have"— but is also definitely refuted by testatrix' letter to her brother, dated September 29, 1955 (about six months before her death) in which, referring to the grandchildren, she said "but if I'm not going to see them, they shall get nothing if I can dispose of everything, if not they will get $1.00." Thus the vacuum created by the theoretical rejection of testimony of appellants and their attorney is filled, at least partially, by the letter and the will; and the presumption against an intent to die wholly or partially intestate is supported.

But respondents produced certain other evidence designed to overthrow the presumption and which caused the trial judge to find : "Decedent intended that if she died before making the later will which she was contemplating, she would die intestate as to said real property and intangible personal property, under the belief that such property would be distributed by the Court to the persons who she thought would be

her heirs at law, assuming that the disinheritance clause in her will were effective. . . . At the time decedent wrote said Will she was not aware of and did not have in mind the rule of law that if property is not disposed of by a will it will pass to one's heirs irrespective of the fact that they purport to be disinherited by the will.'' The judge also concluded, *inter alia*: ''The presumption against partial intestacy has been rebutted, and its effect as evidence has been outweighed, by evidence contrary to this proceeding.''

There is no evidence, direct or inferential, to the effect that testatrix was laboring under any such misapprehension of the law. There is a presumption to the contrary (*Estate of Lindsay*, 176 Cal. 238, 240 [168 P. 113]; *Estate of Talmage*, 114 Cal.App.2d 18, 21 [249 P.2d 345]; *Estate of Steidl*, 89 Cal. App.2d 488, 490 [201 P.2d 58]; *Estate of Dunn*, 120 Cal. App.2d 294, 295 [260 P.2d 964]; 57 Am.Jur. § 1162, p. 759), one which takes on added weight ''where the will evinces an intention on the part of the testator to dispose of his entire estate, *or where intestacy will result in persons sharing in the estate whom the testator expressly cut off in the will''* (emphasis added), 95 C.J.S., § 615, pp. 834-838. In *Strauss* v. *Strauss*, 363 Ill. 442 [2 N.E.2d 699, 703, 105 A.L.R. 1386], it is said: ''Where an intention to disinherit an heir is expressed clearly and manifestly in a will, so as to leave no reason for doubt, a construction of the will which would leave the testator intestate as to any portion of the property will not be adopted to defeat that intention and thus allow the heir to have some share in the estate.''

 The trial court's construction of the phrase ''my belongings'' not only results in frustration of the testatrix' dominant purpose of excluding the grandchildren from enjoyment of her estate, but it is also opposed to the ordinary meaning of that term,—forces a meaning that will result in partial intestacy. *Estate of Olson, supra*, 144 Cal.App.2d 694, 697: ''Ballantine's Law Dictionary [Supp. 1954] in discussing the word 'belongings' says: 'Although the word (belongings) as used in a will, has, on occasion, been restricted to such chattels as are particularly attached to the person, it has more frequently been construed broadly, under the language of the particular wills involved, to include personal property of every nature and even real estate.' ''

*Estate of Kruger*, 55 Cal.App.2d 619, 622 [131 P.2d 619]: ''It is also axiomatic that we must stand by the words of the will, and we cannot attribute to the testator any intention

which cannot reasonably be drawn from the language of the testamentary document itself; but it is also the rule that in examining a testamentary document we must do so with a view to discovering the dominant testamentary scheme or general intention of the decedent; and in this connection the apparent meaning of particular words, phrases or provisions must be subordinated to such scheme, plan or dominant purpose.'' Page 623: ''In other words, we feel that it does violence to reason to assume that the testator, in using the words, 'the rest of my belongings,' to his widow, meant a watch and certain lodge emblems; while reason is satisfied by the assumption, in view of the context and general scheme of the will, that what was meant by the last quoted phrase was that everything in the estate not utilized for the payment of debts and not previously disposed of by provisions of the will should go to the widow.'' P. 624: ''The word 'belongings' used by the testator with reference to the bequest to his wife, is generally understood as including the property that one owns, and it is not infrequently used in that broad sense; and in the instant case we feel that the word may reasonably be used to include all of the testator's remaining property when we consider how the word 'belongings' is ordinarily understood by the lay mind. Were we to give any other construction to the questioned phrase, then, as heretofore indicated, we would violate the fundamental rule enjoined upon us for the construction of wills—that we should carry out the intention of the testator as expressed by the language he used in its entirety—; and furthermore, should we adopt respondent's contention we would frustrate the second bequest in the will which provides for the testator's sister.''

*In re Churchfield's Will* (Sur. Ct.), 165 N.Y.S. 1073, 1074: ''The common usage of the word 'belongings,' at least by a lay mind, includes all property, whether real or personal, and there is nothing in this will to show a contrary intent.''

▮▮▮ Examination of the evidence shows that it lacks substantiality to such an extent that the quoted findings and conclusions fail of support. It consists of several instances in which testatrix, being interested in certain items of personalty, referred to them as her belongings, viz., her son Arthur's ''belongings'' which were on his ship at the time of his death, referring to the contents of his locker; some tools that were in Arthur's car and referred to by testatrix as ''belongings.'' Her stockbroker testified that he was Mrs. Kuttler's stockbroker for 12 years immediately prior to her death;

that he had numerous conversations with her, both by telephone and in person; that she made stock purchases through him based on her own selections; that she made selections on her own by reading the quotations in the boardroom; that she knew and used the terms generally used in connection with stock brokerage accounts; and that she never, to his knowledge, used the term "belongings" in reference to her account or the stocks that she owned. On none of these occasions when Mrs. Kuttler made affirmative reference to belongings was there any reason for drawing any distinction between different kinds of belongings; all the things to which reference was made were in fact belongings of a tangible personal nature and there was no occasion whatever to refer to any other type or to draw any distinction. The fact that decedent never happened to refer to her stocks as belongings has no significance whatever. An inference that this evidence showed testatrix to consider "belongings" as embracing nothing but tangible personalty cannot legitimately arise from the foregoing testimony, for an inference cannot be based upon mere possibility. (*Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal. App.2d 590, 602 [315 P.2d 19]; *Estate of Braycovich*, 153 Cal.App.2d 505, 512 [314 P.2d 767]; *Lyders* v. *Wilscy*, 94 Cal. App. 493, 496 [271 P. 383]; *Estate of Teed*, 112 Cal.App.2d 638, 643-644 [247 P.2d 54]; *Brocato* v. *Standard Oil Co.*, 164 Cal.App.2d 749, 758 [331 P.2d 111]; *Marshall* v. *Parkes*, 181 Cal.App.2d 650, 655 [5 Cal.Rptr. 657]; 4 Cal.Jur.2d, § 609, p. 491.)

The Eramdjian case, *supra*, at page 602, says: "A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ. Proc., §§ 1958, 1960.) It is axiomatic that 'an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork.' (18 Cal.Jur.2d 480.) Yet that is exactly what appellants are attempting to do."

*Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933]: " 'If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. (*Patterson* v. *San Francisco etc. Ry. Co.*, 147 Cal. 178 [81 P. 531].) A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480].) And, also, "A finding of fact must be an inference drawn from evidence rather than on a mere

speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities.'' (23 Cor. Jur., § 1750, p. 18.)' ''

 *Sweeney* v. *Metropolitan Life Insurance Co.*, 30 Cal. App.2d Supp. 767, 772 [92 P.2d 1043] : ''An inference is a deduction which the reason of the jury makes from the facts proved. (Code Civ. Proc., § 1958.) It is not a mere conjecture or an arbitrary *dixit* without reason and without factual support.''

 What constitutes substantial evidence, as distinguished from mere possibility or speculation, is clarified in the following passage from *Estate of Teed, supra,* 112 Cal.App. 2d 638, 644 : ''The sum total of the above definitions is that, if the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case.''

 *Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650] : ''If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside. (*Ibid.*) 'There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment. . . .' ''

Another class of evidence designed to establish the same conclusion is thus characterized by the court's finding V: ''Upon her death decedent left a great quantity of tangible personal property, some of which was of little, if any, intrinsic value, although value was attached to it by decedent, in and about her apartment and garages appurtenant thereto.'' The concluding portion of said finding, ''[h]er purpose in inserting the last paragraph in said Will was to protect that property from being carried away by anyone other than the donees of the power of appointment,'' is sheer speculation.

It thus appears that the hiatus in the proof created by a rejection of the testimony of Beatson, McQuarrie and Hayter has not been filled with substantial evidence and the presumption against intended partial intestacy still stands. The principles invoked in *Teich* v. *General Mills, Inc.,* 170 Cal. App.2d 791, 800 [339 P.2d 627], become applicable: ''This uncontradicted evidence could not be rejected. *Estate of*

*Kuttler,* 160 Cal.App.2d 332, 337 [325 P.2d 624] : ' "While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of fact." (*Gomez* v. *Cecena,* 15 Cal.2d 363, 366 [101 P.2d 477].)

"It is the general rule that 'the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.' [Citations.]" '

In *Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788], the court stated the general rule that: 'Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted.' But it was further said, at page 660 : 'To these well settled rules there is a common sense limited exception which is *aimed at preventing the trier of the facts from running away with the case.* This limited exception is that the trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. The trier of the facts may not believe impossibilities. When the rebutting testimony is of such a nature that the minds of reasonable men cannot differ on the subject, then the trier of the facts cannot, and should not be permitted to, indulge in the inference.' " (Emphasis added.)

We have concluded that the controlling finding in this case—" [b]y the use of the phrase 'my belongings' in her Will, decedent intended to and did refer to her tangible personal property only, and did not intend to and did not refer to her intangible personal property, including cash on deposit, and her real property"—is not supported by substantial evidence; that the presumption against deliberate intestacy stands unimpaired by countervailing proof and that the judgment must be reversed.

The "Decree Determining Interests in Estate and Order Denying Petitions for Preliminary Distribution" is reversed with instructions to the lower court to make and enter a decree determining that the power of appointment conferred upon appellants Bertha McQuarrie and Earl Hayter, also known as O. E. Hayter, by the will of Ethel May Kuttler, deceased, embraces decedent's entire estate, both real and personal property, and that said appellants, having duly exercised this power in favor of themselves, are entitled to have said dece-

dent's entire estate, both real and personal property, distributed to them, as tenants in common, each an undivided one-half interest therein; and with directions to the trial court to grant the petitions of Bertha McQuarrie and Earl Hayter, also known as O. E. Hayter, heretofore filed in these proceedings, for preliminary distribution, as therein prayed.

Fox, P. J., and Nourse, J. pro tem.,* concurred.

A petition for a rehearing was denied November 2, 1960, and respondents' petition for a hearing by the Supreme Court was denied November 30, 1960.

*Assigned by Chairman of Judicial Council.